FRICK v PATRICK

Docket Nos. 94681, 94691. Submitted November 4, 1987, at Grand
Rapids. Decided January 19, 1988. Leave to appeal applied for.

Gary Patrick leased property in Squaw Creek Woods Subdivision
No. 4 in Marshall Township to the State of Michigan for the
Department of Mental Health for the purpose of developing an
Alternative Intermediate Services for Mentally Retarded (AIS/
MR) program home. The Squaw Creek Neighborhood Association
then filed suit against Patrick seeking to enjoin him from
building, leasing, or maintaining an AIS/MR home on the prop-
erty. The trial court denied the association's request for a
preliminary injunction and issued a writ of mandamus ordering
Marshall Township to issue a building permit to Patrick. The
township issued the permit. Patrick then sold the property to
Ronald Quinn, Daniel Davis, Edward Schmeichel and Lydia
Perritt, members of the association. Patrice Elms, another
association member, orchestrated the sale. Plaintiffs, Barry
Frick, by his guardian Beverly Frick, Alfred Goodrich, by his
guardian Merlan Goodrich, James Van Schoick, by his guard-
ian Bob Van Schoick, and Roger Grable, by his guardian Helen
Fleming, then brought the present action in the Calhoun
Circuit Court against Patrick, Quinn, Elms, Davis, Schmeichel
and Perritt alleging breach of contract, intentional interference
with a contractual relationship and conspiracy to intentionally
interfere with a contractual relationship. Common to each
count was the allegation that plaintiffs were third-party benefi-
ciaries of the lease between Patrick and the state. The plaintiffs
are mentally retarded. Frick and Grable were scheduled to be
placed in the AIS/MR home and a community placement plan
had been developed for Goodrich and Van Schoick. The defen-
dants moved for summary disposition. The trial court, James C.
Kingsley, J., concluded that plaintiffs were third-party benefi-

REFERENCES

Am Jur 2d, Contracts §§ 294, 295, 297, 308.

Comment Note.—Mutual rescission or release of contract as affect-
ing rights of third-party beneficiary. 97 ALR2d 1262.

What constitutes reservation of right to terminate, rescind, or
modify contract, as against third-party beneficiary. 44 ALR2d
1270.

ciaries of the lease and that the lease bound defendant Patrick only. Summary disposition was granted for all defendants but Patrick. Plaintiffs appealed from the order granting summary disposition and defendant Patrick appealed from the denial of his motion for summary disposition. The appeals were consolidated.

The Court of Appeals *held:*

Plaintiffs are not third-party beneficiaries of the lease between Patrick and the state. Patrick did not promise to do anything directly for plaintiffs. The benefits received by plaintiffs from the lease would be indirect. Plaintiffs lack standing to enforce the lease and assert claims against any of the defendants. The order granting all defendants but Patrick summary disposition is affirmed. The order denying summary disposition in favor of Patrick is reversed.

Affirmed in part and reversed in part.

1. CONTRACTS — THIRD-PARTY BENEFICIARIES.

Any person for whose benefit a promise is made by way of contract has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee; a promise shall be construed as having been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person (MCL 600.1405; MSA 27A.1405).

2. CONTRACTS — THIRD-PARTY BENEFICIARIES.

The courts use an objective standard to determine whether a plaintiff is a third-party beneficiary to a contract; the contract itself reveals the parties' intentions; the parties' motives and subjective intentions are irrelevant in determining whether a plaintiff is a third-party beneficiary (MCL 600.1405; MSA 27A.1405).

*Michigan Protection and Advocacy Service* (by *Patricia A. Stamler* and *Barry Smith*), for plaintiffs.

*Currie, Stieper, Haddrill & Seyferth, P.C.* (by *Robert M. Currie*), for Gary Patrick.

*Lilly, Domeny, Durant, Byrne & Schanz, P.C.* (by *Robert J. Connelly*), for Ronald Quinn and Patrice Elms.

*Sullivan, Hamilton & Schulz* (by *Michael J. Toth*), for Daniel Davis.

*Allen & Letzring* (by *Kurt F. Letzring*), for Edward Schmeichel.

*Schroeder, DeGraw, Kendall & Mayhall* (by *Ronald J. DeGraw*), for Lydia Perritt.

Before: WAHLS, P.J., and BEASLEY and D. A. BURRESS,* JJ.

BEASLEY, J. Plaintiffs, Barry Frick, Alfred Goodrich, James Van Schoick and Roger Grable, appeal as of right from a July 30, 1986, order[1] granting summary disposition in favor of defendants Ronald Quinn, Patrice Elms, Daniel Davis, Edward Schmeichel and Lydia Perritt. Defendant Gary Patrick appeals from a portion of that order denying his motion for summary disposition. Both appeals deal with plaintiffs' right to enforce a lease between defendant Patrick and the state.

In August, 1984, Calhoun County Community Mental Health (CMH) launched a search for suitable property within Marshall Township to adapt into an Alternative Intermediate Services for Mentally Retarded (AIS/MR) program home. By December, 1984, CMH decided that no such property was available. Consequently, CMH deferred to the Department of Management and Budget's (DMB) bidder site selection process.

On March 27, 1985, defendant Patrick submitted a bid to the DMB. The DMB selected Patrick's bid April 17, 1985, after approving lots 70 and 71 of Squaw Creek Woods Subdivision No. 4; Sec. 33, T2S, R6W, Heather Drive, Marshall Township, for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The order was amended October 30, 1986, to correct certain clerical errors.

the AIS/MR home site. On May 20, 1985, the Michigan State Housing Development Authority (MSHDA) approved the site plan. On June 21, 1985, Patrick purchased the Heather Drive land.

On June 24, 1985, CMH notified the Marshall Township Board of the site selection. That same day, CMH began its community notification process. This process included a June 26, 1985, mailing of notice of its intent to develop an AIS/MR home on Heather Drive to thirty-five area property owners, including defendants Quinn, Davis, Schmeichel, Elms and Perritt, the June 27, 1985, door-to-door canvassing of twenty-seven neighboring residences, including those of Quinn, Davis and Schmeichel, and four public information sessions.

On July 2, 1985, Patrick leased[2] the Heather Drive site to the State of Michigan for the Department of Mental Health (DMH). The lease ran from July 1, 1986, to December 31, 2005. That same day, defendants Quinn, Schmeichel, Davis, Perritt and Elms, all members of the Squaw Creek Neighborhood Association, placed three signs on Perritt's property, located adjacent to the Heather Drive site. The signs said:

A) The proposed site for a AIS-MR home
   Help us stop this
   You could be next!
B) FACTS:
   1. Land Aquired by Fraud
   2. Denied our constitutional rights
   3. Increased traffic threatens 30 kids
   4. Ponds, River & R. R. track—unsafe site.
C) Yes Folks: This is it! [with an arrow pointing toward the Heather Drive site]

[2] Patrick signed the lease July 1, 1985. Vaughn Rawson of the Department of Mental Health (DMH) signed the lease July 2, 1985. The Michigan State Administrative Board approved the lease July 16, 1985. DMB director Robert H. Naftaly signed the lease September 9, 1985. Thereafter, MSHDA issued a mortgage commitment to Patrick.

On July 15, 1985, John Seita, program administrator for Developmentally Disabled Client Services of Calhoun County Mental Health, developed a comprehensive placement plan for thirty-four residents of the Coldwater Regional Center for Developmental Disabilities, including plaintiffs Frick, Goodrich and Van Schoick, and twenty-one other residents of the Kalamazoo Total Living Center, including plaintiff Grable. Seita identified Frick and Grable for placement in the Heather Drive AIS/MR home. He also developed a community placement program for Goodrich and Van Schoick. All four plaintiffs suffer from the developmental disability of mental retardation.

On August 28, 1985, the Squaw Creek Neighborhood Association filed suit against Patrick to enjoin him from building, leasing, or maintaining an AIS/MR home on the Heather Drive site. On October 1, 1985, the trial court denied the neighborhood association's request for a preliminary injunction. A week later, it issued a writ of mandamus ordering Marshall Township to issue a building permit to Patrick. The township issued the permit October 8, 1985. Subsequently, Patrick sold the Heather Drive property to Quinn, Davis, Schmeichel and Perritt. Elms allegedly orchestrated the sale.

On January 4, 1986, plaintiffs filed the instant suit, alleging breach of contract, intentional interference with a contractual relationship and conspiracy to intentionally interfere with a contractual relationship. Common to each count was the allegation that plaintiffs were third-party beneficiaries of the lease between Patrick and the state.

Each defendant moved for summary disposition under MCR 2.116(C)(8) on the ground that plaintiffs had failed to state a claim upon which relief could be granted. Davis also sought summary disposition under MCR 2.116(C)(10), alleging that

there was no genuine issue of material fact and that defendants were entitled to judgment as a matter of law. After amendments to the pleadings and a June 30, 1986, hearing, the trial court concluded that plaintiffs were third-party beneficiaries of the lease. The court held that the lease bound defendant Patrick only and granted summary disposition to all defendants but Patrick. The ensuing order gave birth to the within appeals.

The central issue on appeal is whether plaintiffs are third-party beneficiaries of the lease between Patrick and the state. If not, they lack standing to enforce the lease and assert claims against any of the defendants. MCL 600.1405; MSA 27A.1405, which governs the rights of third-party beneficiaries, provides in part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The courts use an objective standard to determine whether a plaintiff is a third-party beneficiary under the statute. The contract itself reveals the parties' intentions.[3] The parties' motives and subjective intentions are irrelevant in determining whether a plaintiff is a third-party beneficiary.[4] In *Rieth-Riley Construction Co, Inc v Dep't of Trans-*

[3] *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425, 430; 357 NW2d 62 (1984), lv den 422 Mich 911 (1985).

[4] *Guardian Depositors Corp v Brown,* 290 Mich 433; 287 NW 798 (1939).

*portation,*[5] this Court applied a simple test taken directly from the statutory language to determine whether plaintiff, a subcontractor, was a third-party beneficiary to a construction contract between defendant and the general contractor, asking: "[D]id defendant make a promise to do something directly to or for plaintiff?" The Court held that, even though plaintiff would have benefitted from a price escalator clause in the primary contract, had the defendant actually paid the general contractor more and the general contractor passed such amount on to the subcontractor, the benefit would have been indirect.

Here, the benefits received by plaintiffs from the lease between Patrick and the state also would be indirect. Patrick promised to lease the Heather Drive site to the state. He did not promise to do anything directly for plaintiffs. The benefits plaintiffs would have received from an AIS/MR home at the Heather Drive site would flow from the state, not from Patrick. Frick and Grable would benefit because the state chose to house them at the Heather Drive site. The benefit accorded to Goodrich and Van Schoick would be less direct. Their gain would derive from the fact that an AIS/MR home at the Heather Drive site would make space available in other community placement programs. Plaintiffs' benefits were subject to the decisions of the DMH and its county agencies.

Unlike *Dagen v Village of Baldwin*[6] or *Greenlees v Owen Ames Kimball Co,*[7] two cases in which the Court found plaintiffs to be third-party beneficiaries, the within contract did not contain direct promises to plaintiffs. In *Dagen,* the contract in question provided that a class of persons including plaintiff "shall not be assigned to perform work

[5] See n 3, *supra,* 136 Mich App 432.
[6] 159 Mich App 620; 406 NW2d 889 (1987).
[7] 340 Mich 670; 66 NW2d 227 (1954).

that entails a significant degree of risk to life or health." In *Greenlees,* the contract provided that defendant should perform remodeling work in a manner that would cause a minimum of disturbance to the daytime operations in a building. Plaintiff, a shopkeeper, was a tenant of the building. While the lease between Patrick and the state reveals that the Heather Drive site likely would be used as an AIS/MR home, it contains no direct promises to plaintiffs.

Plaintiffs also argue that they are third-party beneficiaries under the lease because Patrick agreed to discharge a duty owed by the state to plaintiffs.[8] Plaintiffs claim that Patrick assumed the state's obligation[9] to ensure them community placement, after care services, mental health services suited to the individual needs of those committed to the care of the state, and safe, sanitary and humane living conditions. Plaintiffs misinterpret the obligations imposed by the lease. Patrick did not assume any of the aforementioned duties. He only agreed to supply the state, through MSHDA and the DMH, with one of the tools used to fulfill the needs of those in the state's care. Patrick did not contract to discharge any duty owed by the state to plaintiffs.

Because we hold that plaintiffs are not third-party beneficiaries of the lease between Patrick and the state, we affirm the trial court's order granting summary disposition to defendants Quinn, Davis, Schmeichel, Perritt and Elms, and reverse its order denying summary disposition in favor of defendant Patrick.

Affirmed in part and reversed in part.

---

[8] *Talucci v Archambault,* 20 Mich App 153; 173 NW2d 740 (1969).

[9] We do not comment on the accuracy of plaintiffs' view of the extent of the state's duty.