Kathleen **TAGGART**,
Plaintiff–Appellant,

v.

**UNITED STATES of America**,
Defendant–Appellee.

No. 86–1925.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 15, 1987.

Decided July 21, 1989.

Jerome A. Susskind (argued), Jerome A. Susskind, P.C., Jackson, Mich., for plaintiff-appellant.

Victoria A. Roberts (argued), Asst. U.S. Atty., Detroit, Mich., Janice Kittel Mann, Asst. U.S. Atty., for defendant-appellee.

Before ENGEL, Chief Judge; *
RYAN, Circuit Judge; and PECK,
Senior Circuit Judge.

ENGEL, Chief Judge.

In this action brought under the Federal Tort Claims Act, Plaintiff–Appellant Kathleen Taggart appeals a summary judgment of the United States District Court for the Eastern District of Michigan, holding Defendant–Appellee United States of America immune from liability, given a settlement agreement executed between Taggart and a third party, the All Saints Episcopal Church. We find that the settlement agreement precludes Taggart's action against the United States and accordingly affirm the district court's summary judgment.

The United States Post Office in Brooklyn, Michigan is located on property adjacent to that of the All Saints Episcopal Church ("Church"). On January 7, 1984, Kathleen Taggart went to the Brooklyn Post Office, parking her car in a lot at the rear of the building. She crossed the ice-covered sidewalk leading to the post office, entered the building, and undertook her business there. As she approached her automobile after leaving the post office, she slipped on ice, fell, and broke her ankle. It is unclear whether the accident occurred on property owned by the post office, or on property owned by the Church.

On November 21, 1984, while represented by counsel, Taggart and the Church executed a form release agreement (with insertions emphasized) which provides:

That *Kathleen Jane Taggert* for and in consideration of the sum of *Five Thousand and 00/100* Dollars, (*$5,000.00*), the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and forever discharge *All Saints Episcopal Church and The Executive Council of the Protestant Church for the Diocese of Michigan, A Michigan Corporation* his successors and assigns, and/or his, her, their heirs, executors and administrators and also any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above named, may be jointly or severally liable to the Undersigned, of and from any and all, and all manner of, actions and causes of action, rights, suits, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, including claims for contribution, arising from and by reason of any and all KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN bodily and personal injuries or death, damage to property, and the consequences thereof, which heretofore have been, and which hereafter may be sustained by the Undersigned and by any and all other persons, associations, and corporations, whether herein named or referred to or not, and especially from all liability arising out of an occurrence that happened on or about the *7th* day of *January, 1984*, at or near *Main and Marshal Streets, Brooklyn, Michigan 49230*....

On October 16, 1986, Taggart filed a complaint against the United States of America in the United States District Court for the Eastern District of Michigan. She alleged that she was entitled to compensation under the Federal Tort Claims Act, because of the negligence of the United States Post Office. Specifically, she alleged: (1) that the post office had an affirmative duty to keep the parking lot and sidewalk free from ice; (2) that the post office was negligent in allowing an employ-

---

* The Honorable Albert J. Engel assumed the    duties of Chief Judge effective April 1, 1988.

ee to park a mail vehicle in a manner which invaded her right of way as a pedestrian and led to the accident; (3) that the post office was negligent for failing to instruct its employees to park their vehicles in a manner which would not hinder Taggart from using the sidewalk and entering the post office; and (4) that the post office was negligent in failing to maintain the sidewalk and parking lot to ensure that they were free from snow, ice, and water.

On the government's motion for summary judgment pleading the release as a bar, the district court held that the release agreement precluded Taggart's suit against the United States. The court held that, under Michigan law, the express terms of a release govern its scope, absent ambiguity, concealment, duress, mistake, or similar irregularity. Holding the release agreement to be unambiguous, the district court held that Taggart was bound by the terms of the agreement, which released from liability all "persons, associations, [or] corporations"—including the United States—which "may be jointly or severally liable" for Taggart's injuries. The district court held: "The release makes it clear that the $5000 tendered to the Plaintiff by the Church was consideration for a full and final settlement and that all future causes of action, against any person, association, or corporation which may be liable was forever barred." Because we find that the release was unambiguous and clearly relieved the United States' liability for Taggart's injuries, we affirm the judgment of the district court.

■■ Initially, we find that the United States may assert the release agreement as a defense to Taggart's suit. Mich.Comp. Laws Ann. § 600.1405 (1981) provides:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee. (1) **Contracts included.** A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or

do or refrain from doing something directly to or for said person.

Not everyone who benefits in some way from a contract can be considered a third-party beneficiary under this section, however. *Greenlees v. Owen Ames Kimball Co.*, 340 Mich. 670, 676, 66 N.W.2d 227 (1954); *Rieth–Riley Construction Co., Inc. v. Department of Transportation*, 136 Mich.App. 425, 430, 357 N.W.2d 62 (1984). The contract itself reveals the parties' intentions. *Frick v. Patrick*, 165 Mich.App. 689, 694, 419 N.W.2d 55 (1988); *Jachim v. Coussens*, 88 Mich.App. 648, 278 N.W.2d 708 (1979); *Local 80 Sheet Metal Workers v. Tishman Construction Co.*, 103 Mich. App. 784, 303 N.W.2d 893 (1981). A contracting party's motives and subjective intentions are irrelevant in determining whether, under Mich.Comp.Laws Ann. § 600.1405, a third party is a beneficiary of a contract. *Frick v. Patrick*, 165 Mich. App. at 694, 419 N.W.2d at 58; *Rieth–Riley Construction Co.*, 136 Mich.App. at 430, 357 N.W.2d 62. One must "use an objective standard to determine whether a [party] is a third-party beneficiary under the statute." *Frick v. Patrick*, 165 Mich. App. at 694, 419 N.W.2d 55. *See Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 437–38, 287 N.W. 798 (1939), cited with approval in *Jachim v. Coussens, supra.*

■ Before us, then, is the question whether Taggart, by executing the release, undertook "to refrain from doing something directly to" the defendant here such that the defendant may properly be considered a party "for whose benefit a promise is made." By its terms, the settlement agreement released "any and all other persons, associations and corporations, whether herein named or referred to or not, and who together with the above named, may be jointly or severally liable to" Taggart. Viewed objectively, this broad language envisioned the release of all other parties from whom Taggart might recover; the sweeping scope of the release contemplated the discharge of any and all other possible defendants, including the United States, a party not "named or referred to" in the agreement.

Plainly by its language the release purports to confer third-party beneficiary rights upon a class of parties which includes the defendant here. The limited waiver of immunity granted by the United States under the Federal Tort Claims Act has allowed Taggart to sue the United States as any other person whose negligent employee or agent creates *respondeat superior* liability under state law. This is not disputed, and it is not claimed that the position of the United States is any different from that of the class of "all other persons, firms, and corporations" who are released and discharged under the terms of the release. The United States may thus properly interpose the release as a defense to this action.

Taggart nevertheless contends that the agreement does not preclude recovery from the United States. First, Taggart claims that at the time she executed the release and received the $5,000 settlement, she did not expect her injuries would be as severe as they ultimately were. Second, she asserts that through her settlement with the Church, she did not intend to release the United States; in response to the motion for summary judgment, Taggart submitted an affidavit of a Church agent which indicated that the Church likewise did not intend to release the defendant.

Taggart's first assertion is easily dismissed. As a matter of law, Taggart is not entitled to a greater recovery for unforeseen injuries, where the consideration paid by the Church was substantial and where the language of the agreement expressly and with emphasis releases the releasees "from all KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN bodily and personal injuries...." The language of the release is as clear as would be humanly possible to make in this regard.

The validity of the second assertion, that Taggart and the Church did not intend to discharge the defendant here, depends upon whether the language of the agreement is unambiguous. If the language is unambiguous, the meaning of the language is a question of law, and the intent of the parties must be discerned from the words used in the instrument. *Moore v. Campbell Wyant & Cannon Foundry*, 142 Mich.App. 363, 369 N.W.2d 904, 906 (1985); *see also Michigan Chandelier Co. v. Morse*, 297 Mich. 41, 297 N.W. 64 (1941) ("The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest ... This court does not have the right to make a different contract for the parties ... when the words used by them are clear and unambiguous.") However, if the scope of a release agreement is ambiguous, "[t]he question thus becomes one of determining the intention of the parties to the release." *Stitt v. Mahaney*, 403 Mich. 711, 272 N.W.2d 526, 527 (1978).

We find the language of the release to be clear and unambiguous. The agreement releases and discharges not only the Church, "his successors and assigns" but further releases "any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above named, may be jointly or severally liable to the Undersigned." This language is not ambiguous. The release does not exclude from its broad terms, either explicitly or implicitly, the United States or any other potentially liable party.[1]

The Michigan Supreme Court's decision in *Stitt v. Mahaney*, 403 Mich. 711, 272 N.W.2d 526 (1978), relied upon by the district court, and argued by Taggart as a basis for reversal, is not to the contrary. In *Stitt*, after plaintiff was injured when his motorcycle collided with an automobile, he settled his negligence claim for approxi-

---

1. Had the Church failed to get all other potential joint tortfeasors discharged, it might still have had to face litigation involving contribution to any other non-released tortfeasor who was subsequently sued by Taggart. Whether such contribution might ultimately be barred is immaterial, for the Church could have been buying peace and freedom from legal costs which might be involved in such litigation, even if successful. Such a motive for entering the agreement certainly would not have been irrational.

mately $7,500, granting the driver of the automobile a general release which discharged the liability of the tortfeasor "and all other persons, firms, and corporations of and from any and all actions ... resulting or to result from the accident or occurrence." Subsequently, Stitt sued Dr. Mahaney and other medical personnel for injuries resulting from alleged medical malpractice in treating Stitt's injuries; the doctor interposed the release as an affirmative defense to the malpractice action.

In a divided opinion, a majority of the Michigan Supreme Court concluded that the trial judge had properly placed before the jury the factual question whether the parties to the release, i.e. the motorcycle driver and the auto owner, had intended their settlement-release agreement to extend to Dr. Mahaney and others. A minority of the Michigan Supreme Court concluded that it was error to have introduced the release in evidence because as a matter of law it was not intended to release the doctors notwithstanding its broad general language.

The ambiguity in the release language, acknowledged in the *Stitt* majority opinion (authored by then Justice Ryan) arose from interpretation of language referring to "the accident or occurrence above described" as applied to the alleged acts of medical malpractice, such acts arguably being of a different nature and having occurred at a different time and place from those for which the release was purportedly given.

No such ambiguity exists here: it is evident that Taggart has incurred but one indivisible injury resulting from one discrete occurrence, though perhaps a result of different agencies whose concurrent actions created that single harm. *Stitt* is thus inapposite. *See Harris v. Lapeer Public School System,* 114 Mich.App. 107, 318 N.W.2d 621, 624–25 (1982); *cf. Wilson v. W.A. Foote Memorial Hospital,* 91 Mich. App. 90, 284 N.W.2d 126, 130 n. 2 (1979).

Try as we may, we are unable, under an objective standard, and upon the facts to which the release pertained, to discern any ambiguity in the release which Taggart executed. The Michigan federal district judge was of a like mind and fully aware of the Michigan Supreme Court's pronouncement in *Stitt.* We accord considerable deference to the judgment of a federal district court when it applies the law of the state in which it sits. *See Diggs v. Pepsi–Cola Metropolitan Bottling Co.,* 861 F.2d 914, 927 (6th Cir.1988); *Agristor Leasing v. Saylor,* 803 F.2d 1401, 1407 (6th Cir.1986).

Moreover, given the posture and pleadings of this case, we need not consider the line of Michigan cases recognizing the availability of rescission or reformation for a contract unintended by the parties. *See, e.g., Lenawee County Board of Health v. Messerly,* 417 Mich. 17, 331 N.W.2d 203 (1982); *Denton v. Utley,* 350 Mich. 332, 86 N.W.2d 537 (1957) (Smith, J.). Taggart has not sought rescission or reformation here, nor is the Church a party to this action.

In executing her release, Taggart was represented by counsel. The amount of consideration received was $5,000, an amount in excess of the then known medical expenses and by no means a nominal sum whose insufficiency might be apparent on the face of the instrument. We therefore need not address the equitable issues of rescission or reformation, nor the equally difficult question whether such equitable relief would be available here given the potentially intervening rights accruing to the United States and other intended third-party beneficiaries of the release. We must accept the unambiguous language of the release as executed.

Accordingly the judgment of the district court is AFFIRMED.