HAMMACK v LUTHERAN SOCIAL SERVICES OF MICHIGAN

Docket No. 152705. Submitted November 2, 1994, at Detroit. Decided
    May 19, 1995, at 9:45 A.M.

Charlotte Hammack, as personal representative of the estate of
    Jerry Hammack, brought an action in the Wayne Circuit Court
    against Lutheran Social Services of Michigan and Veronica
    Keenan, a Lutheran Social Services employee, alleging breach
    of contract and negligence resulting in the death of Jerry
    Hammack. The decedent had been a developmentally disabled
    individual residing in a home operated by Lutheran Social
    Services under contract with the State of Michigan when he
    died after suffering a seizure in a bathtub. The court, John A.
    Murphy, J., entered a judgment on a jury verdict in favor of
    the plaintiff. The defendants appealed.

    The Court of Appeals held:

    1. The trial court did not err in denying summary disposition
    for the defendants, who had argued that they owed no action-
    able duty to the decedent. Because the defendants acknowl-
    edged that the decedent had entrusted himself to the control
    and protection of the defendants, they effectively conceded the
    existence of a special relationship between them and the dece-
    dent that gave rise to a duty on their part. Negligence with
    respect to that duty properly was a question for the jury.

    2. The trial court did not err in refusing to direct a verdict in
    favor of the defendants with respect to the premises liability
    claim. A possessor of land does not owe a duty to protect
    invitees where conditions arise from which an unreasonable
    risk of harm cannot be anticipated, or from dangers that are so
    obvious and apparent that an invitee may be expected to
    discover them. In this case, the trial court properly submitted
    to the jury the factual questions whether there was an unrea-
    sonable risk of harm from the lack of monitoring devices and
    whether such risk was open and obvious.

    3. By not objecting at trial, the defendants failed to preserve
    for appeal the issue whether the trial court erred in concluding
    that the question whether the decedent was a third-party
    beneficiary of the contract between Lutheran Social Services
    and the state was a factual question for the jury.

    4. Review of the claim that the trial court, in prohibiting

certain testimony, effectively precluded the defendants from presenting a defense to the contract claim is inappropriate inasmuch as the defendants failed to raise the argument in their statement of the questions presented.

5. By failing to argue it in their motion for a directed verdict, the defendants failed to preserve for appeal the claim that the plaintiff, with respect to the contract claim, failed to present sufficient evidence that the failure to monitor the decedent was the proximate cause of death. With respect to the premises liability claim, the plaintiff presented sufficient evidence regarding the causal connection between the lack of monitoring and the death from which reasonable persons could draw a fair inference that the defendants' negligence caused the injury.

6. Questions posed by the plaintiff's trial counsel to defense witnesses suggesting that defense counsel had directed their testimony was not indicative of a deliberate course of conduct aimed at preventing a fair and impartial trial or at deflecting the jury's attention from the issues involved. Cautionary instructions by the trial court to the jury also cured any prejudice to the defendants.

7. Because the record is unclear with respect to whether the plaintiff's counsel introduced the subject of insurance for the defendants, the Court of Appeals cannot review the defendants' claim that the introduction was improper.

8. Failure by the trial court to give SJI2d 66.01A to the jury cannot be reviewed by the Court of Appeals as a claim of error because the defendants did not request the instruction at trial or specifically object to the absence of that instruction from the instructions that were given.

Affirmed.

*Gary A. Krochmal (Sommers, Schwartz, Silver & Schwartz, P.C.* by *Patrick Burkett,* of Counsel), for the plaintiff.

*Paskin, Nagi & Baxter, P.C.* (by *Patricia J. Battersby* and *Daniel J. Seymour*), for the defendants.

Before: TAYLOR, P.J., and HOLBROOK, JR., and M. E. DODGE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

TAYLOR, P.J. Defendants appeal as of right a judgment based upon a jury verdict awarding plaintiff $1 million on claims of breach of contract and negligence. We affirm.

On August 12, 1986, plaintiff's decedent, Jerry Hammack, a thirty-year-old mildly retarded, seizure-prone, developmentally disabled man living in the Tracey Augustana Home (Home), died while bathing. Plaintiff alleged that Hammack drowned after having a seizure in the tub and that his death could have been prevented if defendant Veronica Keenan, an employee of the Home, had suitably monitored Mr. Hammack while he bathed. Pursuant to a contract with the State of Michigan, specifically the Wayne Community Living Services, defendant Lutheran Social Services of Michigan (LSS) operated the Home. It was designed to provide a semi-independent living situation for developmentally disabled individuals such as Mr. Hammack. Under the contract, LSS agreed

> [t]o deliver services in accordance with an individual plan of service for each recipient as developed by the agency, or the agency designated client services management agency, in consultation with the licensee [defendant].

Mr. Hammack's Individual Plan of Service (IPS) was developed with an eye toward increasing his independence. Accordingly, the IPS provided that Mr. Hammack could be left alone and unsupervised for up to five hours a day. A Nursing Health Care Plan (NHCP) was attached to Mr. Hammack's IPS and was thought by some of both parties' witnesses to be incorporated in the IPS. The NHCP contained directions for intervention and care of Mr. Hammack during his seizures, some of which occurred as recently as 1985 and the summer of 1986. The NHCP also stated that Mr. Hammack

should not be left alone while bathing because of his past seizure activity.

Defendants argue that the trial court erred in denying their motion for summary disposition based on the claim that, as a matter of law, they owed no duty to monitor Mr. Hammack while bathing. We disagree.

In order to assert negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff. *Douglas v Elba, Inc,* 184 Mich App 160, 163; 457 NW2d 117 (1990). The existence of a duty is a question of law for the court's resolution. *DeMare v Woodbridge 1985, Inc,* 182 Mich App 356, 358; 451 NW2d 871 (1990). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977); *Horn v Arco Petroleum Co,* 170 Mich App 390, 392; 427 NW2d 582 (1988). As a general rule, there is no duty to aid or protect another. *Williams v Cunningham Drugstores, Inc,* 429 Mich 495, 499; 418 NW2d 381 (1988). However, a limited exception to this rule arises when a special relationship exists between the plaintiff and the defendant. *Id.; DeMare, supra.*

In their brief on appeal, defendants acknowledge that a special relationship existed between LSS and Mr. Hammack. In making this concession, defendants acknowledge that Mr. Hammack "entrusted himself to the control and protection of defendant." *Dykema v Gus Macker Enterprises, Inc,* 196 Mich App 6, 9; 492 NW2d 472 (1992). We reject defendants' argument that because of the emphasis placed on Mr. Hammack's becoming more independent, LSS did not have the level of control over him that would give rise to a duty to monitor him

while he bathed. Having acknowledged the existence of a special relationship, by definition, defendants have admitted the existence of a duty. The performance of that duty is left to the factfinder, in this case the jury, to evaluate. Thus, simply stated, whether defendants were negligent in not monitoring Mr. Hammack while he bathed was a question for the jury to decide. Compare *Paulen v Shinnick,* 291 Mich 288, 291; 289 NW 162 (1939) (whether a nurse in charge of a patient placed on the third floor of a private mental hospital was guilty of negligence in leaving a window unlocked was a question for the jury where the nurse had been advised that the patient needed supervision).

Defendants further argue that the trial court erred in denying their motion for a directed verdict on the premises liability claim regarding the lack of monitoring devices in the bathroom. We disagree.

As was the case with the first issue, the initial question here, whether defendants owed a legal duty to plaintiff, must be decided by the trial court as a matter of law. *Riddle v McClouth Steel Products Corp,* 440 Mich 85, 95; 485 NW2d 676 (1992). In Michigan, a premises owner must maintain the property in a reasonably safe condition and the owner has a duty to exercise due care to protect invitees from conditions that might result in injury. *Id.* at 90. In *Quinliven v Great Atlantic & Pacific Tea Co,* 395 Mich 244, 258-259; 235 NW2d 732 (1975), the Michigan Supreme Court adopted 2 Restatement Torts, 2d, § 343, pp 215-216, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care

would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Accordingly, the invitor must inspect the premises to discover any possible dangerous conditions of which the invitor is not aware and take reasonable precautions to protect the invitees from dangers that are foreseeable from use. *Thompson v Essex Wire Co,* 27 Mich App 516, 525; 183 NW2d 818 (1970). However, a possessor of land does not owe a duty to protect invitees where conditions arise from which an unreasonable risk cannot be anticipated, or from dangers that are so obvious and apparent that an invitee may be expected to discover them. *Riddle, supra* at 94.

Arguing in support of their motion for a directed verdict at trial, defendants claimed that the absence of monitors, alarms, or walkie-talkies in the bathroom was not a condition from which an unreasonable risk of harm could be anticipated. Alternatively, they claimed that the dangerous condition was obvious. The trial court ruled that "whether or not there would be an unreasonable risk of harm" from the lack of monitoring devices was a factual question. The trial court properly submitted this question to the jury. Because the NHCP contained a precaution against Mr. Hammack bathing unsupervised, the danger of him using the bathtub was foreseeable, requiring defendants to take reasonable precautions. *Thompson, supra.* Regarding the issue whether this risk was open and obvious, thus precluding the creation of

a duty, the trial court correctly found that it was a factual question for the jury.

Defendants further argue that the trial court erred in concluding that the question whether plaintiff's decedent was a third-party beneficiary of the contract was a factual question. They argue that the matter was a question of law for the court to determine. However, defense counsel failed to object to the trial court's determination regarding this issue. Accordingly, we conclude that this issue has not been preserved for appeal. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993); *Rutherford v Dep't of Social Services,* 193 Mich App 326, 330; 483 NW2d 410 (1992).

Even if the issue had been preserved, any error was harmless because, as a matter of law, Mr. Hammack was ascertainable as the beneficiary of the contract pursuant to MCL 600.1405(2); MSA 27A.1405(2), and the jury found him to be a beneficary. We find this case distinguishable from *Frick v Patrick,* 165 Mich App 689; 419 NW2d 55 (1988), inasmuch as, unlike the situation in *Frick,* the promisor promised to do things directly for the residents of the Home, including Mr. Hammack. *Rhodes v United Jewish Charities of Detroit,* 184 Mich App 740; 459 NW2d 44 (1990); *Talucci v Archambault,* 20 Mich App 153; 173 NW2d 740 (1969).

Defendants also argue that the trial court's prohibition of certain testimony effectively precluded them from presenting a defense to plaintiff's contract claim. This argument was not raised in the statement of the questions presented and, therefore, review is inappropriate. *Orion Twp v State Tax Comm,* 195 Mich App 13, 18; 489 NW2d 120 (1992). However, we briefly point out that defendants were not prevented from presenting a

defense; rather, the trial court's decision merely prohibited opinion testimony by lay witnesses regarding the ultimate issue whether the contract was breached.

Defendants argue that the trial court erred in failing to grant their motion for a directed verdict on grounds that plaintiff's evidence did not show that the failure to monitor was the proximate cause of Mr. Hammack's death. We note that defendants argued below only that proximate cause was lacking with regard to the premises liability claim. They did not argue that plaintiff presented insufficient evidence of proximate cause regarding the contract claim. Accordingly, the argument with regard to the contract claim is not preserved for appellate review. *Scott v Jones & Laughlin Steel Corp (On Remand)*, 202 Mich App 408, 416; 509 NW2d 841 (1993). With regard to the premises liability claim, as discussed earlier, defendants have admitted a special relationship existed giving rise to a duty. That having been established, plaintiff presented sufficient evidence regarding the causal connection between the lack of monitoring and the death from which reasonable persons could draw a fair inference that defendants' negligence caused the injury. Accordingly, this matter was appropriately sent to the jury. *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 223; 160 NW2d 889 (1968).

The present case is distinguishable from the recently decided case of *Garabedian v Beaumont Hosp,* 208 Mich App 473; 528 NW2d 809 (1995). Unlike the situation in *Garabedian* where the plaintiff sustained injuries in an unexplained fall from a hospital bed, in this case there was testimony regarding the cause of the accident. The jury had evidence, which it apparently believed given the verdict, that the drowning was occasioned by

an epileptic seizure. The lack of this type of causal connection was fatal to the claim in *Garabedian.* The *Garabedian* case could only have been submitted to the jury, if at all, had it been pleaded as a matter of res ipsa loquitur.

Defendants also contend that improper statements by plaintiff's counsel prejudiced the jury and diverted the jury's attention from the merits of the case. We disagree.

With regard to the three occasions during the trial in which questioning of defense witnesses by plaintiff's counsel implied that defense counsel was directing their testimony, we have reviewed the challenged comments and have found that they were cured by instructions from the court and did not deny defendants a fair trial. A review of the record does not support a finding that the three instances indicate a deliberate course of conduct aimed at preventing a fair and impartial trial, nor were the comments such that they deflected the jury's attention from the issues involved. *Wilson v General Motors Corp,* 183 Mich App 21, 26; 454 NW2d 405 (1990).

Defendants also assert that plaintiff's counsel improperly introduced the subject of insurance. We note that the trial transcript is unclear regarding what actually happened, and defendants failed to make a detailed objection on the record. Defendants' motion for a mistrial also did not describe the actions of plaintiff's counsel. There was no express reference to insurance by plaintiff's counsel, and counsel for all parties admit being uncertain whether the jury could see the physical reference to insurance when plaintiff's counsel waved the folder labeled "Insurance." Under these circumstances, it would be a matter of speculation that the jury even knew of insurance. Accordingly, we find that the trial court acted well within its

discretion in handling the matter. The trial court was clearly in a much better position to evaluate this matter and acted appropriately, given the court's discretion in these matters.

Finally, defendants argue that the trial court erred in failing to give the appropriate special verdict form, SJI2d 66.01A. Defendants assert that the form used by the trial court did not differentiate between past and future damages and that, accordingly, it is impossible to determine what portion of the damages should be reduced to present value.

To preserve an instructional issue for appeal, the objection must specifically state the objectionable matter and the ground for the objection. MCR 2.516(C); *Cornforth v Borman's, Inc,* 148 Mich App 469, 477; 385 NW2d 645 (1986). While defendants did object to the entire verdict form used by the trial court, this general objection failed to preserve this issue for review because defendants did not specifically state the ground for the objection. MCR 2.516(C); *Cornforth, supra.* Defendants' argument rests upon the allegation that they demanded, and the trial court refused to give, the standard jury verdict form, SJI2d 66.01. In any event, a review of SJI2d 66.01 shows that it contains a verdict form that does not satisfy defendants' now-asserted desire for a form with an allotment of past versus future damages. That form was SJI2d 66.01A, yet defendants did not request it. Because defendants did not request SJI2d 66.01A at trial, they cannot raise the claim of error for the first time on appeal. *Booth Newspapers, Inc, supra* at 234; *Rutherford, supra* at 330.

Affirmed.