JOHNSTON BROTHERS, INC., *v.* VILLAGE OF COOPERS-
VILLE.

1. CONTRACTS—ANNEXED PAMPHLET PART OF CONTRACT.
    Where pamphlet describing well and its construction for purpose
    of eliminating sand and containing statements in nature of
    warranties was attached to contract with village for construc-
    tion of well, pamphlet *held,* part of contract.

2. SAME—BREACH OF WARRANTY—DAMAGES—RECOUPMENT.
    In action against village for balance of contract price for con-
    struction of well, village was properly allowed to recover
    damages on its counterclaim for breach of warranty against
    pumping sand, where said breach was clearly established.

3. APPEAL AND ERROR—INSTRUCTIONS—WARRANTY—IMPLIED WAR-
    RANTY—HARMLESS ERROR.
    In action on contract, where only breach of warranty asserted
    and shown by evidence was against pumping sand, and that
    jury so understood is indicated by colloquy between jurors
    and judge, instruction respecting implied warranty as to qual-
    ity of water, if erroneous, *held,* not prejudicial, in view of
    final instruction that question submitted was whether sand
    was pumped.

Appeal from Ottawa; Miles (Fred T.), J. Sub-
mitted November 4, 1932. (Docket No. 134, Calen-
dar No. 36,729.) Decided December 6, 1932. Re-
hearing denied March 2, 1933.

Assumpsit by Johnston Brothers, Inc., a Michigan
corporation, as assignee, against Village of Coopers-
ville, a municipal corporation, and another, on a con-
tract to construct a well. Defendant village counter-
claimed for breach of warranty. Verdict and judg-
ment for defendant village. Plaintiff appeals. Af-
firmed.

As to matter in letterhead, billhead, or on margin of paper on
which contract is written, as part of contract, see annotation in
L. R. A. 1916D, 1072.

. *Louis H. Osterhous,* for plaintiff.

*Dean S. Face,* for defendant village.

CLARK, C. J.   Plaintiff's assignor, Harmon-Ness Company, contracted with defendant village to construct a well of a type known as Layne Patent Gravel Wall Well.  The village had other wells, and had been troubled by sand, and the contractor was told of this, and it claimed that its type of well was the best in the world for such soil.   The contractor was first to sink to proper depth a 40-inch steel casing, within which was to be put down later an 18-inch steel screen casing.   The space between the casings was to be filled with washed gravel.   It appears from an illustration that the screen casing goes to a greater depth than the large casing and is for such greater depth to be enclosed in a wall of gravel.   The perforations in the screen were three-sixteenths of an inch, through which the water must pass into the well.   The purpose and theory of putting in the gravel wall is to retard the movement of water in the hope of preventing quicksand and silt from flowing into the well.

The well was constructed.   The water was turbid and unfit for use except after pumping for nearly 30 minutes each time.   It contained sand and other fine earth.   The village had paid part of the contract price, and here resists further payment in the suit of the contractor's assignee.   Defendant answered the declaration and set up counterclaim for breach of warranty.   The verdict was no cause of action, on which judgment was entered.   Plaintiff has appealed.

The chief question is whether certain printed matter is a part of the contract.

The printed matter is attached to the contract in a bound pamphlet. The title page of the pamphlet contains the words "Proposal. Harmon-Ness Company." The next eight pages have illustrations of a completed well, of casing, screen, gravel wall, and pump, and descriptive matter, and statements, some of which, if part of the contract, are express warranties, among them: "water leaves the sand at a velocity so low it will not carry any sand." Following these pages are five pages of printed form of contract which was executed with some interlineations and changes. The contract in form does not refer to the printed matter, and it contains no express warranty in respect of the sand, although the very purpose of the village in accepting this peculiar and expensive type of well was to exclude the sand. And the absence of such warranty from the form of contract is especially significant in view of the fact that the village caused to be written into it a warranty that the water would be of sanitary quality. It is apparent it was understood by the contractor who so attached the printed matter and by the village in executing that the printed matter was a part of the contract. The contract without such matter is incomplete. The very manner of attaching or annexing the printed matter is significant, and the contract in form does not express the entire agreement of the parties. (22 C. J. p. 1283.) We hold, as did the trial court, the printed matter part of the contract.

In 6 R. C. L. p. 857, the following:

"Matters annexed to contract or referred to therein.—A memorandum on a written contract qualifying or restraining its operation forms part of it. Thus, a memorandum on a bill or note indorsed thereon contemporaneously with the execution of

the instrument forms a part of the contract and binds the parties to the same extent as if it had been embodied in the instrument. An indorsement upon an instrument before its execution may be treated as an explanation in writing of the intent of the parties; although to have this effect it must be shown affirmatively to have been upon the instrument when executed,"—

citing *Wheelock* v. *Freeman,* 13 Pick. (30 Mass.) 165 (23 Am. Dec. 674); *Emerson* v. *Murray,* 4 N. H. 171 (17 Am. Dec. 407). And see Williston on Contracts, § 580; *Key* v. *Cross, Adams & Co.,* 23 Miss. 598; *Baldwin* v. *Jenkins,* 23 Miss. 206; note L. R. A. 1916D 1072; note 28 A. L. R. 991.

In 13 C. J. p. 530, the following:

"Writings which are made a part of the contract by annexation or reference will be so construed,"— citing many cases, a review of which as well as of cases digested under the appropriate key number in American and Decennial digests, shows that nearly all fall under the reference feature of the rule, as where the contract refers to specifications, other contracts, documents, or writings.

But we have no doubt of the correctness of the rule as above stated as applied to a writing being a part of the contract by annexation alone in proper cases.

If one contracts in writing with another to plant a number of trees and there is attached to the contract when executed a printed page entitled "How to plant trees," and describing the method, and the written contract is silent as to such method and does not refer to attached page, may not the page be held to be part of the contract?

If a principal contractor sublets a part of the work by written contract to a subcontractor and a copy of

the principal contract is attached at time of execution and the contract without the attached copy is not complete, may not the attached be considered a part of the contract although not expressly adopted by reference?

There was, therefore, in the case at bar an express warranty against sand, and breach was established in fact, as the jury held.

The trial judge in his charge, at the request of defendant's counsel, gave some instructions respecting implied warranty as to quality of water, but finally settled down to the following:

"But it was warranted by this company that they would produce a well here that wouldn't pump sand. Now, if it does pump sand, the village is entitled to recover for the damages occasioned by its pumping sand. It seems to me that is where it ought to stand. It ought to rest right there, on the question of whether or not it pumped sand. Now that is the question I am submitting to this jury. Does it pump sand?"

The evidence shows no other breach of contract, no other breach was asserted, and the jury so understood, as indicated by colloquy between jurors and the trial judge. We think the plaintiff not prejudiced by the instruction respecting implied warranty, assuming it to be erroneous, as contended.

Other questions considered do not call for reversal.

Affirmed.

McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred. FEAD, J., did not sit.