Raymond COCHRAN, Plaintiff,

v.

ERNST & YOUNG, formerly Ernst & Whinney and Robert Daddow, Wayne County Employees Retirement Commission (formerly Board of Trustees), National Bank of Detroit, Defendants.

No. 90–CV–70707–DT.

United States District Court, E.D. Michigan, S.D.

March 20, 1991.

Clifford R. Williams, Detroit, Mich., for plaintiff.

William T. Coleman, III, Francis R. Ortiz, Detroit, Mich., for defendants.

### MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

Plaintiff sued defendants for breach of state law fiduciary duties, civil violation of

the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The alleged violations stem from defendants' management of the Wayne County Retirement System's Defined Contribution Plan. Plaintiff seeks monetary relief.

This matter comes before the Court on defendants' motions to dismiss.[1] Plaintiff filed timely responses. All parties have fully briefed the relevant issues; and pursuant to E.D.Mich.Local R. 17(1)(2), the Court addresses them without entertaining oral argument.

Upon review of the motions, briefs and file in this case, the Court finds that a contractual settlement and release agreement executed by plaintiff and the Wayne County Employees Retirement Commission bars plaintiff from maintaining this litigation against all the defendants. Accordingly, defendants' motions are granted.

Furthermore, the Court finds that in accordance with Fed.R.Civ.P. 11, defendants Wayne County Employees Retirement Commission, Ernst & Young, and Robert Daddow are entitled to receive costs and attorney fees incurred after the execution of the disputed settlement and release agreement.

## II. FACTS

### A. Generally

On March 14, 1990, Raymond Cochran ("plaintiff") filed his original complaint, alleging breach of state common law fiduciary duties, RICO violations, and breach of a federal statute prohibiting false statements to federal agencies, 18 U.S.C. § 1001 *et seq.* Plaintiff subsequently filed an amended complaint, which substituted an ERISA claim for the 18 U.S.C. § 1001 claim. Although the captions to both of plaintiff's complaints indicate that the case is a class action lawsuit, he has not attempted to certify the suit as a class action under Fed.R.Civ.P. 23; therefore, plaintiff is the only complainant in this action.

Plaintiff was a Wayne County employee and a Certified Public Accountant. The Wayne County Employees Retirement Commission ("WCRC")[2] is charged with the operation and management of the Wayne County Retirement Fund. Ernst & Young and Robert Daddow ("EY & D") provide accounting services for the WCRC in relation to the management of the fund. National Bank of Detroit ("NBD") acts as trustee for the fund.

Soon after the instant case was filed, all defendants filed motions to dismiss in which they alleged that a prior state court judgment precluded the instant action and that plaintiff had failed to state a claim upon which relief could be granted. The Court held the motions in abeyance in order to resolve a preliminary matter regarding the existence and effect of a settlement and release agreement executed by plaintiff and the WCRC.

### B. The Settlement Discussions

On July 6, 1990, plaintiff met with representatives of Wayne County[3] for the purpose of discussing the settlement of three legal actions, two pending in state court and one—the instant case—pending in federal court. Plaintiff, represented by his attorney in one of the state cases, Mr. Kurt Yockey ("Yockey"), and representatives from Wayne County were all present at the meeting and were the only parties to the settlement agreement. The parties in attendance recorded the discussions, and the

1. As mentioned below, the Court construes these motions under Fed.R.Civ.P. 56.

2. The WCRC is also referred to as the "Wayne County Employees' Retirement System Board of Trustees."

3. Counsel for the WCRC noted that when Wayne County Corporation Counsel attorneys negotiated with plaintiff, they acted on behalf of the WCRC pursuant to authority granted in § 33.07 of the Wayne County Retirement Ordinance, which states that "[t]he corporation counsel shall be the legal advisor to the retirement commission." *See also* art. 4, ch. 3 of the Home Rule Charter for Wayne County, which empowers Corporation Counsel to represent the County in all civil actions.

WCRC submitted a copy of the record as an attachment to its motion to dismiss.

The first state case discussed at the July 6 session involved plaintiff's claim of race discrimination against the WCRC, which a jury resolved in favor of plaintiff for over $400,000. At that time, the WCRC's appeal of that case was pending before the Michigan Court of Appeals. The second state case discussed involved a claim brought against EY & D, in which plaintiff challenged the parties' management of the Wayne County Retirement Fund. The instant case was also the topic of discussion at the settlement negotiations. As mentioned above, the instant case involves RICO, ERISA, and fiduciary claims. For the sake of convenience, the Court refers to the state cases as the "discrimination" and the "retirement" cases.

At the settlement discussions, Yockey stated that he was plaintiff's attorney in one of the state cases, but not in the instant case. Plaintiff advised Yockey that he would be requesting the attorney representing him in the other cases, including the instant case, to dismiss all three cases "as part of his obligation embodied in the release in the agreement ... about to put on [the] record." To this end, plaintiff's attorney in the instant case, Mr. Clifford Williams ("Williams"), subsequently prepared a stipulation and order of dismissal that was circulated for signatures but was never filed.

The comprehensive settlement and release agreement that emerged from the negotiation session released all cases then pending, specifically the state race discrimination case, the state retirement case, and the instant case. Now, though, plaintiff challenges the validity and enforcement of the settlement and release agreement in relation to the instant case.

### III. LEGAL ANALYSIS

A. Jurisdiction to Enforce Settlement Agreements Through Summary Proceedings

Federal courts possess the inherent power to enforce agreements executed in set-tlement of litigation pending before them. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir.1976); *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir.1973); *All States Investors, Inc. v. Bankers Bond Co.*, 343 F.2d 618 (6th Cir. 1965). The Sixth Circuit Court of Appeals has stated that

> A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effective; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.

*Aro*, 531 F.2d at 1371 (quoting *Melnick v. Binenstock*, 318 Pa. 533, 179 A. 77 (1935)).

Additionally, this Court has the authority to enforce settlement agreements through summary proceedings. *Aro*, 531 F.2d at 1372; *Kukla*, 483 F.2d at 621. And when enforcement is determinable solely as a matter of law, a court need not conduct an evidentiary hearing. *Aro*, 531 F.2d at 1372. Because summary enforcement of the agreement in this case presents no genuine issue of material fact (as discussed more fully below), the Court in accordance with *Aro* and E.D.Mich.Local R. 17(1)(2) has declined to hold an evidentiary hearing. Therefore, this Court issues its opinion based entirely on the motions and the parties' briefs.[4]

### B. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the movant is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exist-

---

4. Because the Court has relied on matters outside the pleadings to reach a decision, defen-dants' motions to dismiss are construed as Fed. R.Civ.P. 56 motions for summary judgment.

ence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the non-movant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 368 U.S. 894, 82 S.Ct. 171, 7 L.Ed.2d 91 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Where the non-movant has failed to present evidence on an essential element of its case, it has failed to meet its burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Although summary judgment is disfavored, it may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.,* 806 F.2d 673, 675 (6th Cir.1986).

The fact that two parties to a contract differ on the interpretation of terms in that contract does not, by itself, render summary judgment inappropriate. *Tennessee Consolidated Coal Co. v. United Mine Workers of America,* 416 F.2d 1192, 1199 (6th Cir.1969); *Cleveland–Cliffs Iron v. Chicago & North Western Transp. Co.,* 581 F.Supp. 1144, 1149 (W.D.Mich.1984); *Steinmetz Electrical Contractors v. Local Union No. 58,* 517 F.Supp. 428, 432 (E.D. Mich.1981).

After considering the pleadings, motions and briefs, the Court notes that the facts are not at issue. Rather, the dispute in this case involves the legality and effect of a settlement and release agreement (the "agreement") to which defendants refer the Court. Plaintiff argues that the agreement is legally deficient and does not constitute a defense to the instant case. Defendants argue that the agreement is legally enforceable and acts as a bar to the instant case. The Court begins its analysis by referring to the contents of the actual agreement.

**C. The Contents and Application of the Agreement**

In the instant case, there are three documents at issue, each one entitled "Settlement and Release," which refer to and incorporate each other. In accordance with the dictates of *Johnston Bros. v. Village of Coopersville,* 261 Mich. 26, 246 N.W. 551 (1933) (writings made part of the contract by annexation or reference will be construed as part thereof), the Court concludes that one agreement exists, and it is comprised of the three documents unified by textual cross-references.

The settlement agreements present very broad provisions releasing many parties from many claims. The language of the agreement is clear and decisive, and lists all essential terms, such as the parties and claims released, the type and amount of consideration, and other provisions regarding time of performance and confidentiality. Furthermore, the structure and language of the documents signal the intent of both the WCRC and plaintiff to comprehensively settle three pending cases, including the instant case, that involve the parties to this action. Because the three documents overlap significantly, it is helpful to examine each one separately.

### 1. Document #1

In relevant part, the first document releases the following parties from liability: (1) "the Wayne County Employees' Retirement System Board of Trustees,"[5] (i.e. the WCRC) and (2) the WCRC's "associates" and "consultants." These parties, among others, are termed the "RELEASED PARTIES." As consultants and associates, EY & D and NBD qualify as released parties under document #1.[6] Therefore, the first document applies to the WCRC, EY & D and NBD and releases them from the claims mentioned below.

In relevant part, the first document discharges the released parties from the following claims and or liabilities: (1) the state discrimination claim against WCRC, and (2) "any and all claims, demands, actions, damages or liability and other rights of every kind and nature whatsoever that [plaintiff] may have had or conceived himself to have whether known or unknown, foreseen or unforeseen, whether on [sic] his individual capacity or as a member of a class, against the RELEASED PARTIES predating the execution of this agreement."

Thus, read as a whole, the first document releases the WCRC, EY & D and NBD (as associates and consultants) from not only the state discrimination claim, but from any and all other claims predating the agreement. Because the instant case predated the agreement, the instant case falls within the document's definition of a "released claim." The effect of the first agreement, by itself, is to bar the claims and release the parties in the instant case.

### 2. Document #2

The second document releases EY & D from liability. EY & D are termed the "RELEASED PARTIES" and they are released from the claims listed below.

The second document discharges EY & D from the following claims and or liabilities: (1) the state retirement case, and (2) "any and all claims, demands, and other rights whether known or unknown, foreseen or unforeseen, of every kind and nature whatsoever that [plaintiff] may have had or conceived [him]self to have against the RELEASED PARTIES ... predating the date of the execution of this Agreement ... arising out of the RELEASED PARTIES relationship with the county of Wayne and/or the Wayne County Retirement Commission."

Thus, read as a whole, the second document releases EY & D from not only the retirement case in state court, but also from all other claims predating the agreement that arise out of EY & D's relationship with the WCRC. As all of the claims in the instant case asserted against EY & D arise out of their relationship with the WCRC and predate the execution of the agreement, the second document releases EY & D from the instant case.

### 3. Document #3

The third document explicitly releases from liability the WCRC and EY & D. These parties, among others, are termed the "RELEASED PARTIES."

In relevant part, the third document discharges the released parties from the following claims:

[The case of] "RAYMOND COCHRAN, on behalf of himself and all persons similarly situated, Plaintiffs, v. ERNST & YOUNG (formerly known as ERNST & WHINNEY) and ROBERT DADDOW, WAYNE COUNTY EMPLOYEES RETIREMENT SYSTEMS' RETIREMENT COMMISSION (formerly BOARD OF TRUSTEES), NATIONAL BANK OF DETROIT, Defendants' with the United States District Court for the Eastern District of Michigan, Southern Division, with the case number of 90–CV–70707 DT.

\*　　\*　　\*　　\*　　\*　　\*

[and] "any and all claims, demands, and other rights whether known or unknown, foreseen or unforeseen, of every kind and nature whatsoever that [plaintiff]

---

5. The parties to the instant case agree that the "Wayne County Employees' Retirement System" is the same as the WCRC.

6. See *infra* at 1558–59.

may have had or conceived [him]self to have against the RELEASED PARTIES ... predating the date of the execution of this Agreement ... arising out of the RELEASED PARTIES relationship with the county of Wayne and/or the Wayne County Retirement Commission."

Clearly, in document # 3, plaintiff explicitly releases the WCRC and EY & D from the instant case.

 Contracts that are unambiguous are not open to construction and must be enforced as written. *Cleveland–Cliffs Iron Co. v. Chicago & Northern Western Transp. Co.*, 581 F.Supp. 1144 (W.D.Mich. 1984); *Britton v. John Hancock Mut. Ins. Co.*, 30 Mich.App. 566, 186 N.W.2d 781 (1971); *Barner v. City of Lansing*, 27 Mich.App. 669, 183 N.W.2d 877 (1970). If the contract terms are not ambiguous, then contradictory inferences that may be drawn are subjective and irrelevant. *Naph–Sol Refining Co. v. Murphy Oil Corp.*, 550 F.Supp. 297, 301–02 (W.D.Mich. 1982).

The agreement in this case is unambiguous and does not require any construction or supplementation from extraneous sources. As mentioned above, the agreement, although perhaps inefficiently and unartfully drafted, contains clear and decisive language leading to only one reasonable interpretation: with respect to all the defendants, plaintiff agreed to settle and dismiss the instant case. Each of the three documents comprising the agreement precisely identifies the parties and claims released, and otherwise satisfies the requisites of contract formation and enforceability. Although the three component parts of the agreement are partially redundant, if a contract, no matter how unartfully worded or clumsily arranged, fairly admits of but one interpretation, it cannot be characterized as ambiguous or fatally unclear. *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440 (1982). Such is the case here.

### D. Plaintiff's Objections

After accepting over $650,000 as consideration for the agreement, plaintiff now challenges the validity and enforcement of the agreement. Plaintiff asserts numerous imprecise objections regarding the meaning and effect of the agreement. In essence, plaintiff asserts five arguments. First, plaintiff argues that he and the WCRC never mutually assented to the agreement. Second, plaintiff claims that the agreement is void for failure of consideration. Third, plaintiff argues that the agreement lacks legal effect because he did not consult with his attorney in the instant case, Williams, before signing the settlement agreement. Fourth, plaintiff contends that he was coerced into entering the settlement agreement. Fifth, plaintiff contends that EY & D and NBD, as non-parties to the agreement, are incapable of enforcing the promises in the agreement. Plaintiff's arguments lack merit.

### 1. Mutual Assent

First, plaintiff claims that although he may have settled with the WCRC, he did not intend to release EY & D and NBD. In response to defendants' motions, plaintiff submitted an affidavit indicating his subjective understanding that the agreement would not and was not intended to release EY & D and NBD.

 The argument that plaintiff and the WCRC did not intend to release the EY & D and NBD depends on whether the language of the settlement agreement is ambiguous. *Taggart v. United States*, 880 F.2d 867, 870 (6th Cir.1989). If the language is unambiguous, then the meaning of the language is a question of law, and the intent of the parties must be discerned from the words used in the instrument. *Id.* (citations omitted). When the words of the contract are unambiguous, the court must presume that the parties understood the terms of their contract and that they possessed the intention evidenced by such terms. *Id.* (citing *Michigan Chandelier Co. v. Morse*, 297 Mich. 41, 297 N.W. 64 (1941)). If a written contract exists—like in the instant case—neither party may avoid the effects thereof by claiming that such effects failed to comport with its subjective understanding of the contract lan-

guage. *Cleveland–Cliffs Iron Co. v. Chicago & North Western Transp. Co.*, 581 F.Supp. 1144 (W.D.Mich.1984).

Here, as mentioned above, the language of the agreement is clear and unambiguous. The WCRC and EY & D are specifically released from the instant case by the express terms of the agreement. NBD, as an associate and consultant, is likewise released from the instant case.[7] Furthermore, pursuant to *Cleveland–Cliffs,* plaintiff's subjective understanding of the agreement is inconsequential. Therefore, the Court concludes that the parties mutually assented to the terms of the agreement.

### 2. Validity of Consideration

Plaintiff argues that any agreement to settle the instant case lacked consideration. Plaintiff asserts that the defendants do not "in their brief [sic] indicate any nominal consideration or substantial consideration of any sort from E & Y, ROBERT DADDOW, NBD or the WAYNE COUNTY RETIREMENT COMMISSION to settle." Plaintiff further argues that his receipt of over $650,000 constitutes consideration only for the settlement of the state race discrimination case and not the instant case. The Court disagrees.

Under Michigan law, as a general rule, courts will not inquire into the adequacy of consideration. *Cleveland–Cliffs Iron Co. v. Chicago & North Western Transp. Co.*, 581 F.Supp. 1144 (E.D.Mich. 1984); *Moffit v. Sederlund*, 145 Mich.App. 1, 378 N.W.2d 491 (1985). In Michigan, any consideration, however slight, is legally sufficient to support a promise. *Sambo's Restaurant, Inc. v. City of Ann Arbor*, 473 F.Supp. 41 (E.D.Mich.1979); *Harris v.*

*Chain Store Realty,* 329 Mich. 136, 45 N.W.2d 5 (1951). Also, in Michigan, a release from liability requires only nominal consideration. *Denton v. Utley,* 350 Mich. 332, 86 N.W.2d 537 (1951).

The language and form of the parties' agreement belie plaintiff's argument. As defendants note in their briefs, the agreement includes conspicuous provisions regarding the amount, tender, and acceptance of consideration. The first document recites payment of over $650,000 as consideration for the release of the WCRC and its consultants and associates from the state race discrimination claim and all other claims accruing up to the time of the execution of the settlement, which includes the instant case.[8] The second document recites payment of one dollar as consideration for the release of EY & D from the state retirement case and all other claims arising out of their relationship with the WCRC, which includes the instant case. The third document also recites payment of one dollar as consideration for the release of the WCRC and EY & D from all claims accruing up to the time the settlement was executed, which includes the instant case. In addition, the first and second documents include plaintiff's acknowledgments of receipt of the stated consideration.

Plaintiff's allegation that the settlement is void for lack of consideration runs directly contrary to Michigan law and the express language of the agreement. Because substantial or nominal consideration attaches to each promise made in the agreement, the Court concludes that legally sufficient consideration supports the agreement and renders it enforceable by any party or third-party beneficiary.

**7.** The settlement agreement does not exclude from its broad provisions, either explicitly or implicitly, the WCRC, EY & D, NBD, or any other potentially liable party. If the WCRC did not secure the release of all potentially liable parties, it could have very well found itself impleaded as a third-party defendant in any litigation not precluded by the agreement. Therefore, it was rational for the WCRC to bargain for a very broad agreement that released a broad class of potentially liable parties.

**8.** Plaintiff suggests that the payment of over $650,000 dollars represents nothing more than the amount the WCRC owed plaintiff pursuant to a judgment entered against the WCRC in the state discrimination case. While it is true that plaintiff was awarded damages in that case at the trial level, because the case was on appeal at the time the settlement was executed, the WCRC had no pre-existing duty to tender payment until it exhausted all appeals.

### 3. Consultation with Counsel

Plaintiff also claims that he "is not bound by any terms of any consent and/or release agreement when he was not represented by counsel, when he had counsel of record and was not given an opportunity to consult with that counsel of record...."

■■■ As a matter of fact, plaintiff's assertion is unfounded. First, counsel did represent plaintiff. Although Williams is plaintiff's attorney in the instant case, Yockey—plaintiff's attorney in the state race discrimination case—advised plaintiff in the settlement of all three pending cases, including the instant case. Yockey attended the settlement meeting with plaintiff and in fact recited the agreement with plaintiff's approval. Second, despite Williams' absence from the meeting, Williams had ample time to counsel plaintiff before plaintiff signed the agreement. The transcript of the settlement meeting includes the following statement by Yockey:

> While I do not represent Mr. Cochran ... with respect to the Federal District Court case which is pending, I have been advised by Mr. Cochran that he will be requesting the attorney representing him in [that] matter[ ] to dismiss those actions as part of his obligation embodied in the release in the agreement we are about to put on this record.

Three weeks passed before plaintiff executed the agreement. During that period, Williams had sufficient time to offer plaintiff advice. Indeed, Williams' input and advice is reflected by his subsequent preparation of a stipulation and order of dismissal that was circulated among the parties to the instant case, but was never filed. Third, the language of the settlement undermines plaintiff's argument. The settlement agreement states that

> I [plaintiff] declare that I have read this Release, that I have discussed it with my legal counsel, that I fully understand its terms, and intending to be legally bound, I voluntarily accept the consideration recited ... for the purpose of making a full and complete compromise,

adjustment and settlement of all claims.... (emphasis added)

As a matter of fact, the Court concludes that plaintiff had the opportunity to receive advice from counsel and utilized the assistance of counsel of record, Williams, before entering into the agreement.

Also, as a matter of law, plaintiff's argument lacks merit. In Michigan, an individual can settle a claim without the assistance of counsel. See Stefanac v. Cranbrook Educational Community, 435 Mich. 155, 458 N.W.2d 56 (1990); Simon v. Ross, 296 Mich. 200, 295 N.W. 615 (1941); Story v. Page, 280 Mich. 34, 273 N.W. 384 (1937). Mich.Court R. 2.507(H). Thus, even if plaintiff's factual allegations are accepted as true, under Michigan law plaintiff lacks recourse.

### 4. Allegations of Duress and Coercion

Next, plaintiff alleges that Yockey coerced plaintiff into entering the settlement agreement. Specifically, plaintiff argues that Yockey coerced plaintiff into entering the settlement by advising plaintiff that "he stood a good chance of not getting anything if he attempted to pursue the [federal case] and that he should not rely on Mr. Williams because he was a poor attorney." Plaintiff does not allege that he was physically intimidated or coerced. In essence, then, plaintiff claims economic duress.

■■■ Fear of financial ruin or economic hardship, alone, is not a legally sufficient basis for claiming coercion or economic duress. Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit, 738 F.2d 163 (6th Cir.1984). To maintain a claim of economic duress or coercion in Michigan, serious financial harm must be threatened, and the person allegedly applying the coercion must act unlawfully. Transcontinental, 738 F.2d 163; Apfelblat v. National Bank Wyandotte–Taylor, 158 Mich.App. 258, 404 N.W.2d 725 (1987). Moreover, a duress claim will not invalidate a contract that is entered into with full knowledge of all the facts and with an opportunity for investigation, consideration, consultation, and reflection. Payne v.

*Cavanaugh,* 292 Mich. 305, 290 N.W. 807 (1940).

■ Plaintiff's duress claim fails for a number of reasons. First, plaintiff has not alleged that Yockey acted in such a manner as to put plaintiff in fear of financial ruin. Plaintiff's affidavit reveals that Yockey advised plaintiff that if he did not settle all the pending litigation, including the instant case, he would ultimately recover nothing if his claims were denied at trial or reversed on appeal. In this respect, Yockey merely offered legal advice, and did not threaten anything. Second, even if one assumes that plaintiff was put in fear of financial ruin, plaintiff has not proved, nor alleged, that Yockey acted unlawfully in, to use plaintiff's characterization, "advising" plaintiff that he should enter the settlement agreement.

Furthermore, plaintiff's conduct overwhelmingly indicates that he acted under his own free will and with the advice of counsel. On July 6, 1990, the parties stenographically recorded their agreement. The transcript of the settlement meeting indicates that the parties met to settle a number of cases, including the instant case. The transcript reveals that "the suits to be dismissed ... include Cochran versus Wayne County, NBD [in the] Federal District Court now pending." The parties' exchange at the close of their meeting further evidences the fact that plaintiff entered into the agreement freely and voluntarily. After noting the salient provisions of the agreement, the parties engaged in the following exchange:

MR. YOCKEY: Is that your understanding of the agreement today?

MS. LINDQUIST: Yes.

MR. COCHRAN: Yes.

MR. YOCKEY: And mine as well.

What is more, plaintiff had exactly three weeks to investigate and reconsider the agreement before it was reduced to a writing and executed on July 27, 1990. In that three week interim, plaintiff also had the opportunity to consult with Williams, counsel in the instant case.

■ The Court concludes that plaintiff knew exactly what he was doing when he signed the settlement agreement, that plaintiff acted under his own free will, and that no individual coerced plaintiff or forced him to act under duress.[9]

### 5. Enforcement of the Agreement: EY & D and NBD as Third–Party Beneficiaries

Lastly, plaintiff expresses dismay because EY & D and NBD are attempting to enforce an agreement to which they are not parties. The parties admit that they do not stand in privity of contract with plaintiff. However, the lack of privity does not diminish the fact that WCRC and plaintiff executed a legally binding agreement that is enforceable at law. The lack of privity only raises the question of whether EY & D and NBD are third-party beneficiaries of the agreement between plaintiff and the WCRC, allowing them to enforce plaintiff's promises to dismiss the instant case.

In Michigan, certain third-parties have statutory rights as third-parties beneficiaries to enforce contractual promises. M.C.L. § 600.1405 (the "statute") governs the rights of third-parties and, in part, provides:

Sec. 1405. Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

9. Plaintiff also claims that the settlement agreement was predicated upon a "conditional clause arbitration." Plaintiff argues that because the conditional clause was not fulfilled, no settlement agreement was formed. The Court disagrees. The settlement provided that within six to eight weeks after executing the agreement, the plaintiff was to have his status and financial benefits determined by binding arbitration. The contractual provision imposes a duty; it does not state a condition. Even if defendants breached such duty, the Court finds that the defendants were excused from performance because plaintiff had immediately breached his duty to dismiss the instant case. *See Standard Transformer Co. v. City of Detroit,* 146 F.Supp. 740 (E.D.Mich.1957).

(1) Contracts Included. A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person. ▮ Courts use an objective standard to determine whether a party is a third-party beneficiary under the statute. *Frick v. Patrick,* 165 Mich.App. 689, 694, 419 N.W.2d 55 (1988). The agreement itself demonstrates the intentions of the parties. *Rieth–Riley Construction Co., Inc. v. Dept. of Transportation,* 136 Mich.App. 425, 430, 357 N.W.2d 62 (1984). Furthermore, In determining whether a party is a third-party beneficiary, the parties' motives and subjective intentions are irrelevant. *Guardian Depositors Corp v. Brown,* 290 Mich. 433, 287 N.W. 798 (1939).

▮ Regarding defendants EY & D, it is clear that in the agreement, plaintiff made a promise directly to them; thus, EY & D are third-party beneficiaries entitled to enforce plaintiff's promise to dismiss the instant case. In this respect, it is helpful to refer to document # 3, (described above) which explicitly releases EY & D from the instant case; therefore, under the statute, EY & D clearly qualify as "[a]ny person[s] for whose benefit a promise is made by way of contract." By promising to dismiss the instant case, plaintiff clearly "has undertaken to give or to do ... something directly to or for" EY & D. Thus, pursuant to the unequivocal language of the agreement and the statute, the Court concludes that EY & D are third-party beneficiaries entitled to enforce plaintiff's promise to settle and dismiss this action.[10] In this regard, it is obvious that plaintiff's

claim that EY & D were not parties to the settlement agreement has no significance and was asserted in derogation of Michigan statutory directives and case law.

▮ With respect to defendant NBD, the Court concludes that plaintiff made a promise to do something directly for it; therefore, NBD is a third-party beneficiary entitled to enforce plaintiff's promise to dismiss the instant case. In the first part of the agreement (document # 1), plaintiff promised to release "associates" and "consultants" from "any and all claims, demands, actions, damages or liability and other rights of every kind and nature whatsoever that [plaintiff] may have had or conceived [him]self to have whether known or unknown, foreseen or unforeseen, whether on his individual capacity or as a member of a class, against the RELEASED PARTIES predating the execution of this agreement." The pivotal question is whether NBD qualifies as a "consultant" and/or "associate" for purposes of the agreement. It does.

One "consults" if he provides information or instruction. *Teplitsky v. City of New York,* 133 N.Y.S.2d 260, 261 (1954). One is an "associate" if he participates in a common plan or shares a unity of purpose with others. *Alleghany Corp. v. James Foundation of N.Y. Inc.,* 115 F.Supp. 282, 296 (1953).

NBD acted as trustee for the Wayne County Retirement Plan that was administered by the WCRC. In its capacity as trustee, NBD provided consulting services by providing information and instruction regarding the management of the retirement fund. As trustee, NBD also participated in a common plan with the WCRC—

---

**10.** Also, document # 2, described above, explicitly and unequivocally releases EY & D from "any and all claims, demands, and other rights whether known or unknown, foreseen or unforeseen, of every kind and nature whatsoever that [plaintiff] may have had or conceived [him]self to have against [EY & D] ... predating the date of the execution of this Agreement ... arising out of the [EY & D's] relationship with the county of Wayne and/or the Wayne County Retirement Commission."

The instant case is the subject of plaintiff's settlement promise because it both predated the

execution of the settlement agreement and arose out of EY & D's relationship with Wayne County and/or the WCRC. Plaintiff filed the instant case on March 14, 1990 and the settlement agreement was executed on July 27, 1990, postdating the complaint by over four months. Also, because plaintiff alleges that EY & D mismanaged Wayne County pension funds, his claim against EY & D arises out of EY & D's relationship with the County. Therefore, EY & D were directly benefitted by plaintiff's promise to dismiss this case and can enforce that promise in document # 2 as third-party beneficiaries.

the operation and administration of the retirement plan. Thus, NBD is a "consultant" and "associate" under the terms of the agreement. Because plaintiff's promise to settle and dismiss the instant case directly benefitted NBD, NBD, as an associate and consultant, is a third-party beneficiary within the meaning of the statute, and can enforce plaintiff's promise to release it from liability and to dismiss the instant case.

## IV. SANCTIONS AND ATTORNEY FEES

■ In their motions, defendants have included a request for sanctions and/or attorney fees pursuant to Fed.R.Civ.P. 11. The defendants argue that plaintiff's claims are frivolous and were meant to harass. With respect to defendants WCRC and EY & D, the Court agrees.[11]

Rule 11 of the Fed.R.Civ.P. insures that an attorney's signature on a pleading or motion certifies that the attorney has read the document and that to the best of the attorney's knowledge, the document is well grounded in fact and warranted by existing law or a good faith argument for a change or reversal of that law. The attorney's signature also includes a guarantee that the document was not created to increase costs, cause harassment, or create delay. Violations of the rule will result in sanctions and reasonable expenses incurred because of the filing of the document. *Century Products, Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir.1988). The advisory notes indicate that the language of Rule 11 points to the importance of inquiry into the facts and the law before a pleading or motion is filed. Rule 11 imposes this duty on the attorney prior to the signing of the document. Thus, the standard of review under Rule 11 is no longer one of subjective good faith. Instead, the standard is one of reasonableness under the circumstances. *Id.*

With respect to the WCRC, plaintiff and his attorney acted unreasonably. First, it should have appeared clear, upon investiga-

tion of the facts, that the agreement released the WCRC from the state discrimination case and the instant case. The agreement clearly stated that the WCRC was released from the state discrimination case and any and all other claims, known or unknown, that plaintiff may have against the WCRC. The plain language of the agreement clearly precluded this action against the WCRC. With respect to plaintiff's alleged defenses to the validity of the agreement, they lack merit. But more importantly, a cursory investigation of Michigan law would have revealed the tenuous legal basis of such defenses. Thus, the Court is convinced that after the execution of the agreement, plaintiff's claims against the WCRC were maintained without a reasonable inquiry into the relevant facts and the applicable law and were meant to harass.

The only question regarding the release of EY & D was whether EY & D could enforce the agreement as a third-party beneficiary. A quick perusal of Michigan statutory and case law indicates that they can. Clearly, plaintiff's attempt to maintain this suit against EY & D after the execution of the agreement was unreasonable in light of the facts of this case and the law applicable thereto.

Plaintiff's unreasonable investigation of the law has caused the WCRC and EY & D to incur unwarranted legal costs. Accordingly, pursuant to an order to issue after this opinion, this Court shall impose upon plaintiff and/or plaintiff's counsel, Mr. Clifford Williams, an appropriate sanction, which may include an order to pay the amount of reasonable expenses incurred by the WCRC and EY & D after the execution of the agreement.

## V. CONCLUSION

The executed settlement and release agreement encompasses the parties and claims in the instant case. Therefore, the agreement operates as a bar to this action. Accordingly, defendants' motions, con-

---

**11.** According to the provisions of Fed.R.Civ.P. 11, the Court may, *sua sponte*, assess sanctions and costs against a party or attorney who acts unreasonably.

**1560**

strued as motions for summary judgment, are GRANTED.

Furthermore, for all of the foregoing reasons, the Court finds that plaintiff and/or his counsel in this case, Mr. Clifford Williams, maintained this action without making reasonable factual and legal inquiries and that the claims asserted against the WCRC and EY & D after execution of the agreement were meant to harass. Accordingly, the Court finds plaintiff in violation of Fed.R.Civ.P. 11, and at a later date, by court order, shall impose upon plaintiff and/or his counsel an appropriate sanction.

IT IS SO ORDERED.

## JUDGMENT

IT IS ORDERED AND ADJUDGED that this action is hereby DISMISSED pursuant to the Memorandum Opinion and Order dated March 20, 1991.