86 F.3d 1155
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FOREST PARK ASSOCIATES, Plaintiff-Appellee,
v.
Richard A. SWARTZ, Defendant Third-Party Plaintiff-Appellant,
v.
ATLANTIC ASSOCIATES, INC., David Clapper, Third Party
Defendants-Appellees.
 No. 94-2422.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1996.
 
 Before: KEITH, MARTIN, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Richard A. Swartz ("Swartz"), Defendant and Third Party Plaintiff-Appellant, appeals the order of the district court granting summary judgment to Plaintiff-Appellee, Forest Park Associates ("Forest Park"), and dismissing Swartz's third-party complaint against Atlantic Associates ("Atlantic") and David Clapper ("Clapper"), Third-Party Defendants-Appellees. For the following reasons we AFFIRM the decision of the district court.
 
 I. BACKGROUND
 
 2
 In August, 1987, Forest Park sold an apartment complex to Dayton Riverside. To help Dayton Riverside finance the transaction, Forest Park made a loan to Dayton Riverside in the amount of $1,025,000.00. The loan was one of four that Dayton Riverside attained from different entities to help finance the deal. The loan by Forest Park was secured by a promissory note, a third mortgage on the apartment complex and a guaranty executed by Richard Swartz, a general partner of Dayton Riverside.
 
 
 3
 Dayton Riverside made its last payment on the note to Forest Park on August 14, 1990. By September 1, 1990, Dayton Riverside had also defaulted on the other three loans that it had obtained to finance the purchase of the complex. In a letter dated October 2, 1990, Forest Park made a demand for the full balance of the note.
 
 
 4
 Sometime in October, 1990, David Clapper, a general partner of Forest Park, sought to acquire the apartment complex back from Dayton Riverside in order to protect Forest Park's investment in the property and in the hopes that under his management the venture could become profitable. Clapper, acting through his company, Atlantic Associates, Inc., began negotiations to purchase the complex with Swartz and the other entities that possessed mortgages on the property.
 
 
 5
 In late February, 1991, Swartz and Clapper negotiated and signed an Offer and Agreement of Sale ("Agreement") for the Apartment Complex. The crucial terms of the Agreement were as follows:
 
 
 6
 6. In reliance upon the truth and accuracy of the verified personal financial statement of Richard A. Swartz heretofore delivered by Seller [Dayton Riverside] and Richard A. Swartz to Purchaser [Atlantic], Purchaser agrees to cause to be delivered at the closing to Richard A. Swartz a release by Forest Park Associates of the Guaranty attached as Exhibit "I" and incorporated herein by reference and a consent by Forest Park Associates to the consummation of the transaction contemplated herein.
 
 
 7
 ....
 
 
 8
 9. In the event of default by Purchaser, Seller may declare a forfeiture hereunder and retain the earnest money deposit [$100.00] as its sole remedy....
 
 
 9
 ....
 
 
 10
 19A. The following shall constitute conditions precedent to the liability of Purchaser to consummate the closing described herein, any or all of which may be waived by Purchaser:
 
 
 11
 (a) That Purchaser shall have consummated agreements satisfactory to it with Home Savings and First Mutual with respect to the mortgage indebtedness presently
 
 
 12
 encumbering the Property....
 
 
 13
 Swartz executed the Agreement on behalf of Dayton Riverside and personally with respect to paragraph 6.
 
 
 14
 The Agreement had a closing date of April 1, 1991. This date came and went without the consummation of the deal, and Atlantic tendered to Dayton Riverside the $100.00 earnest money deposit set forth in the Agreement as the exclusive remedy for the breach. The parties subsequently executed two amendments to this Agreement, the second of which was executed on July 13, 1992, and set a closing date of December 15, 1992. This amendment incorporated all portions of the original Agreement and first amendment which were not modified by the express language of the second amendment. The second amendment also reflected Atlantic's successful purchase of the second and fourth mortgages outstanding on the apartment complex. Thus, all that remained to consummate the deal was Atlantic's assumption and or purchase of the first mortgage. This was recognized in the second amendment by a provision which stated that,
 
 
 15
 11. This Agreement shall be null and void in the event that Purchaser fails to obtain a letter of intent from RTC, in a form acceptable to Seller [Dayton Riverside], Swartz and Purchaser [Atlantic] to accept a resolution of the debt owed it by Seller and Swartz and to deliver releases satisfactory to Seller and Swartz (which releases may be mutual) on or before October 15, 1992.
 
 
 16
 Atlantic was never able to work out a deal with the owners of the first mortgage and the deal was never consummated.
 
 
 17
 With the failure of Atlantic's attempts to purchase the complex, Forest Park initiated this action in Oakland County Circuit Court on August 19, 1993, to collect against Swartz on his guaranty. Swartz removed the action to the Eastern District of Michigan Federal District Court on October 14, 1993, based on diversity of citizenship. Swartz subsequently filed a third-party complaint against Atlantic and Clapper seeking indemnification for any amount Swartz was held to owe Forest Park.
 
 
 18
 On August 18, 1994, Forest Park, Atlantic and Clapper all filed motions for summary judgment. On November 10, 1994, the district court granted the motions for summary judgment against Swartz and entered a judgment for Forest Park in the amount of $1,630,561.94 (representing $1,566,238.02 in principal and interest accrued up until August 14, 1994, $59,252.00 in legal fees, and $5,071.92 in costs) plus an additional $356.76 per day for each day after August 15, 1994, that the debt had not been paid. Swartz subsequently filed a notice of appeal to this Court.
 
 II. DISCUSSION
 
 19
 According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of material fact, the court should examine, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). This Court reviews the granting of summary judgment de novo, examining the same factors the district court examined to reach its decision. See City of Mount Clemens v. United States Envtl. Protection Agency, 917 F.2d 908, 914 (6th Cir.1990).
 
 
 20
 Swartz's first contention is that the district court erred in granting summary judgment to Forest Park because (1) the terms of the Offer and Agreement of Sale released him from the guaranty and (2) Forest Park is equitably estopped from denying the release of the guaranty since it made material misrepresentations of fact which Swartz relied upon.
 
 
 21
 Swartz's assertions are clearly without merit. The Agreement explicitly provided that,
 
 
 22
 In reliance on the truth and accuracy of the verified personal financial statement of Richard A. Swartz heretofore delivered by Seller and Richard A. Swartz to Purchaser, Purchaser agrees to cause to be delivered at the closing to Richard A. Swartz a release by Forest Park Associates of the Guaranty....
 
 
 23
 The district court properly interpreted this language to create the closing of the deal as a condition precedent to the delivery of the release. Swartz contends that this was error and that only his cooperation was required to ensure his release from the guaranty.
 
 
 24
 However, in Michigan it is clear that when the plain language of a contract can reasonably be construed in only one manner, that contract is not ambiguous. See, e.g., Raska v. Farm Bureau of Mut. Ins. Co., 314 N.W.2d 440, 441 (Mich.1982); Cochran v. Ernst & Young, 758 F.Supp. 1548, 1554 (E.D.Mich.1991). In addition, once a court has determined that a contract is not ambiguous, construction of that contract is a question of law for the court, which may be properly disposed of by summary judgment. Id. at 1551-54.
 
 
 25
 Here, the plain language of the Agreement and its amendments, contradicts Swartz's assertion that only his cooperation was needed to ensure his release from the guaranty. The Agreement clearly states Swartz will be released from the guaranty at the closing of the proposed sale of the apartment complex. Since a deal was never reached on the first mortgage, the closing never took place and Swartz was never entitled to be released from the guaranty. Moreover, the Agreement explicitly provides that the only remedy Swartz has for failure to consummate a sale is the surrender of a $100.00 earnest money deposit, not release from the guaranty. The amount of this earnest money was not unreasonable, especially since the whole deal was based on the premise that Atlantic and Clapper were attempting to work out a solution to Swartz's debt. The fact Swartz never pursued this remedy does not mean that he had an option to pursue other remedies.
 
 
 26
 Similarly, there is no evidence to support Swartz's claim that Forest Park is equitably estopped from denying the release of the guaranty. The elements of equitable estoppel were set out in the case of Tregoning v. American Community Mut. Ins. Co., 12 F.3d 79, 83 (6th Cir.1993), cert. denied, 114 S.Ct. 1832 (1994), as follows:
 
 
 27
 (1) conduct or language amounting to a representation of material fact;
 
 
 28
 (2) awareness of the true facts by the party to be estopped;
 
 
 29
 (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe the former's conduct is so intended;
 
 
 30
 (4) unawareness of the true facts by the party asserting the estoppel; and
 
 
 31
 (5) detrimental and justifiable reliance by the party asserting the estoppel on the representation.
 
 
 32
 Swartz's equitable estoppel claim fails because there is no evidence that Clapper or anyone else at Forest Park ever represented to Swartz that he would be released from the guaranty in exchange for his cooperation. In addition, Swartz never established detrimental reliance. Indeed, as to Swartz's detrimental reliance claim, the district court correctly found that Swartz only came forward with evidence of one other potential buyer for the complex (besides Atlantic) at a time when the property was not even under contract to Atlantic. Thus, the evidence does not show that Swartz relied on any misrepresentations to his detriment. Rather, it is far more likely that Swartz did not pursue other offers for the apartment complex because he was hoping to obtain a release from the guaranty through a sale of the property to Atlantic.
 
 
 33
 Next, Swartz alleges the district court erred in granting summary judgment to Atlantic and Clapper because (1) Atlantic and Clapper breached their contract with Swartz, (2) Swartz's contract with Atlantic and Clapper was invalid, and (3) Atlantic and Clapper engaged in misrepresentations to Swartz which resulted in actual losses to him.
 
 
 34
 As to Swartz's breach of contract claim, we already have noted that the plain language of the Agreement and its amendments cannot reasonably be interpreted to release Swartz from his guaranty based merely upon his cooperation. Indeed, it is illogical to assume that Atlantic and Clapper would release Swartz from a $1,025,000.00 guaranty merely upon his cooperation.
 
 
 35
 Swartz's claim that he can recover under the equitable doctrines of quasi-contract and/or promissory estoppel is also without merit. See, e.g., Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 939 (6th Cir.1989) (holding that "[a] quasi-contractual theory of recovery is inapplicable when the parties are bound by an express contract"); Advanced Plastics Corporation v. White Consolidated Industries, Inc., 828 F.Supp. 484, 491 (E.D.Mich.1993) (noting that "promissory estoppel is an alternative theory of recovery where no contract exists"). As the district court noted, the clear language of the Agreement had only one interpretation and Swartz's self-serving deposition was the only evidence that supported a theory that there was not a meeting of the minds. In addition, the contract was not illusory since Swartz's forbearance of pursuing other offers for the property was based on consideration found in the Agreement and its amendments--namely, the possibility that Swartz would be released from his guaranty if Atlantic was able to work out a deal with the other apartment complex mortgagees. This possibility constituted very real consideration since it was Swartz's best chance of avoiding liability under the guaranty. Since the Agreement was a valid express contract with a meeting of the minds and sufficient consideration, Swartz's equitable claims must fail.
 
 
 36
 Finally, in regards to Swartz's misrepresentation and detrimental reliance claims against Atlantic and Clapper, as noted above, the record does not disclose any evidence of misrepresentation on the part of Clapper or Atlantic or any detrimental reliance on the part of Swartz. Consequently, summary judgment was proper on these claims as to Clapper and Atlantic.
 
 CONCLUSION
 
 37
 For the foregoing reasons, the decision of the Honorable Gerald E. Rosen granting summary judgment to plaintiff and third-party defendants is hereby AFFIRMED.