BRADEN v WORKMAN

Docket No. 75916. Submitted December 6, 1984, at Grand Rapids.—
Decided October 8, 1985. Leave to appeal denied, 424 Mich —.

Plaintiff, Stanley Braden, a healthy 18-year-old man, ran toward
the man-made lake at Lakeside Camp Park. People nearby
heard a splash and then observed that plaintiff was floating
face-down in the water. Two of the observers, neither of them
trained in first-aid, pulled plaintiff to shore and resuscitated
him. Approximately 15 minutes later, an ambulance arrived.
Then, for the first time, plaintiff's neck was stabilized on a
backboard and he was taken to a hospital, where it was
discovered that plaintiff's fifth vertebra had been crushed,
presumably when plaintiff fell head-long into the water and
bent his head and neck upwards. As a result of this injury,
plaintiff is a paraplegic. He brought an action in the Kent
Circuit Court against Carl E. Workman, Ivan Marsman and
Lakeside Camp Park, a partnership, alleging negligence by
failing to provide a lifeguard, by failing to have proper first-aid
equipment and by maintaining a beach that was too steep and
a bathhouse that was improperly positioned. The court, Wood-
row A. Yared, J., entered a judgment on a jury verdict of no
cause of action and denied a motion for a new trial. Plaintiff
appealed. *Held:*

1. The verdict was not against the great weight of the
evidence.

The court did not err in instructing the jury. It is a question
of fact for the jury to decide whether an owner or proprietor of
swimming facilities was negligent in failing to provide a life-
guard or particular lifesaving equipment.

3. The court did not err in excluding evidence of certain
proffered guidelines prepared by the Great Lakes—Upper Mis-

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Amusements and Exhibitions § 84
Am Jur 2d, Negligence §§ 6-9.
Liability of nonresidential swimming facility for injury or death
allegedly resulting from failure to exercise proper supervision. 87
ALR3d 1032.
[2] Am Jur 2d, Neglience §§ 77-81.

sissippi River Board of State Sanitary Engineers. An industry custom is admissible to prove negligence where the custom is certain, uniform and notorious. The guidelines were not notorious.

4. The trial court did not err in excluding from evidence photographs of the scene of the injury taken six years after the injury.

Affirmed.

1. NEGLIGENCE — SWIMMING FACILITIES — QUESTIONS OF FACT.

It is a question of fact for the jury to decide whether an owner or proprietor of swimming facilities was negligent in failing to provide a lifeguard or particular lifesaving equipment.

2. NEGLIGENCE — EVIDENCE — INDUSTRY CUSTOM.

An industry custom is admissible to prove negligence where the custom is certain, uniform and notorious.

*Williams, Klukowski, Drew & Fotieo, P.C.* (by *Stephen R. Drew),* for plaintiff.

*Rhoades, McKee & Boer* (by *F. William McKee* and *Joel S. Huyser),* for defendants.

Before: R. M. MAHER, P.J., and ALLEN and R. E. ROBINSON,* JJ.

PER CURIAM. Plaintiff appeals as of right from a jury verdict and subsequent judgment of no cause of action entered in favor of defendants. Plaintiff also appeals from the trial court's order denying plaintiff's motion for a new trial and for judgment notwithstanding the verdict.

On June 25, 1976, plaintiff, then a healthy 18-year-old man, ran toward the man-made lake at Lakeside Camp Park. People nearby heard a splash and then observed that plaintiff remained floating face-down in the water. Two of the observers, neither of them trained in first-aid, pulled plaintiff to shore and resuscitated him. Approxi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

mately 15 minutes later, an ambulance arrived. For the first time, plaintiff's neck was stabilized on a backboard and he was taken to a hospital. It was discovered that plaintiff's fifth vertebra had been crushed, presumably when plaintiff fell head-long into the water and bent his head and neck upwards. As a result of this injury, plaintiff is a paraplegic.

At trial, plaintiff sought to prove that defendants had been negligent by failing to have a trained lifeguard by the lake and by failing to have the proper first-aid equipment, specifically a backboard for stabilizing neck injuries, available for use by a trained attendant. Plaintiff presented two expert witnesses who testified that, in their opinion, there should have been a lifeguard present. Both experts expressed their belief that some trained person should always be present and that, for any public swimming facility, a backboard should be required equipment because of the known risk of neck injuries around such swimming facilities. The experts agreed, however, that these standards were not, in fact, universally implemented. Plaintiff also presented expert opinion testimony that the slope of the beach down to the water's edge was too steep and that the "bathhouse" near the lake was improperly positioned. Defendants did not present any expert opinion testimony specifically contradicting these assertions but established that the safety measures recommended by plaintiff's experts were seldom implemented at Michigan State Parks.

On appeal, plaintiff first argues that the trial court abused its discretion by denying plaintiff's motion for a new trial because the verdict was against the great weight of the evidence. After carefully reviewing the record and the trial court's stated reasons for denying the motion (obtained

after remand from this Court), we are convinced that the trial court did not abuse its discretion by denying plaintiff's motion. 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 113. Plaintiff's first expert witness, William Shipp, testified that, had he been consulted about Lakeside Camp Park, he would have required a lifeguard to be present at the lake whenever "there are twenty-five people in the area at any one time". Shipp expressly stated that the "twenty-five people" referred to people actually in the water. When fewer swimmers were present, Shipp nevertheless recommended that a trained employee be available somewhere on the camp site and that a sign stating that there was no lifeguard on duty be posted where it would have optimum exposure to potential swimmers. As stated earlier, Shipp also felt that a backboard should be included in the available first-aid equipment. He also recommended that signs be posted specifically prohibiting running on the beach. Plaintiff's second expert, William Heusner, testified that he felt the above-water slope was too steep and that there "absolutely" should be a lifeguard and a backboard at any swimming area which had been "opened-up". Although defendants did not specifically contradict these expert opinions, defendants successfully brought their conclusion of negligence in this particular case into question. Defendants established that there had only been two swimmers in the water before plaintiff entered the lake; that there most likely had been a sign posted in the water which stated, "Swim at Your Own Risk—No Lifeguard On Duty"; that this same warning had been stated in the camp rules which were distributed to every camper upon registration and that this warning was, in fact, underlined in the rules; and that, despite the existence of various recommended

safety guidelines and standards, including those promulgated by the American Red Cross, the vast majority of state parks with swimming facilities did not have either lifeguards or backboards. Plaintiff's own experts stated that there were no written standards that even suggested a recommended slope grade for above-water slopes. Under these circumstances, we do not find that the trial court abused its discretion by denying plaintiff's motion. Plaintiff also argues, however, that the verdict was against the great weight of the evidence because Michigan law provides that proprietors of bathing resorts, "in fulfilment of [a] general duty of reasonable care, have the specific duty of having suitable persons in attendance and necessary appliances on hand so that bathers, who might get into danger, may be properly supervised and effectively rescued, if the need arises". Plaintiff requested this instruction at trial but the request was denied by the trial court. Plaintiff now contends that both the denial of the request for the instruction and the jury's finding of no negligence were contrary to Michigan law.

Plaintiff took his requested instruction from this Court's opinion in *Kreiner v Yezdbick,* 22 Mich App 581; 177 NW2d 629 (1970), *lv den* 383 Mich 784 (1970). In *Kreiner,* after reversing a trial court's decision granting summary judgment in favor of the defendants, the premises owners, in a premises liability case similar to the case before us, the Court stated, in dicta:

"We do not by remanding find that defendants' negligence, if any, was the proximate cause of plaintiff's decedent's demise. The jury, after a full consideration of all relevant evidence may, as the jury in *Schweitzer [Schweitzer v Gilmore,* 251 F2d 171 (CA 2, 1958)] did, find that defendants' failure to provide lifesaving equipment or lifeguard, or the manner of mooring the raft

was not causative negligence. However, upon remand the trial judge should submit the question to a jury under a charge similar to the one upheld in *Gluckauf v Pine Lake Beach Club, Inc,* 78 NJ Super 8; 187 A2d 357 (1963). We agree with the *Gluckauf* court's holding that the proprietors, such as defendants, of bathing resorts, '* * * in fulfilment of that general duty of reasonable care, have the specific duty of having suitable persons in attendance and necessary appliances on hand so that bathers, who might get into danger because of deep water, may be properly supervised and effectively rescued, if the need arises.' *Gluckauf, supra,* pp 26, 27."

By so doing, the *Kreiner* Court clearly removed the issue of the defendants' negligence from the jury and instructed the jury that, as a matter of law, the defendants had been negligent because they had failed to provide either lifesaving equipment or a lifeguard.

We do not agree with plaintiff that this instruction accurately stated the law in Michigan as it should have been applied to plaintiff's own case. *Kreiner* has twice been cited, by another panel of this Court and by the Supreme Court, for the proposition that a special duty may be owed by a landlord to a *child. Dep't of Civil Rights v The Beznos Corp,* 421 Mich 110, 122, fn 5; 365 NW2d 82 (1984); *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428, 434; 310 NW2d 408 (1981), *lv den* 413 Mich 890 (1982). To the extent that Michigan may recognize such a special duty, it has not yet done so for an adult. See the dicta in *Ald v Cunningham,* 28 Mich App 281; 184 NW2d 360 (1970). We decline to extend the doctrine to apply, as in this case, to a healthy 18-year-old adult. Instead, as stated in *Ald,* we believe that the question of whether or not the failure to provide a lifeguard or particular lifesaving equipment constitutes negligence is a question to be resolved by the

jury. This is particularly true as no statute, licensing regulation, or health and safety regulation required defendants to provide either a lifeguard or the lifesaving equipment at issue here. We further note that the *Kreiner* Court appears to have misinterpreted the holding of the Second Circuit Court of Appeals in *Schweitzer v Gilmore,* 251 F2d 171 (CA 2, 1958). That court specifically held that the issue of whether or not the owners of a bathing resort had been negligent in failing to take safety precautions such as lifeguards, lifeboats or life rings was for the jury to determine.

Plaintiff next contends that the trial court erred by excluding admission of a set of recommended guidelines prepared by the Great Lakes—Upper Mississippi River Board of State Sanitary Engineers in 1975. The guidelines, entitled *Recommended Standards for Bathing Beaches,* were referred to by plaintiff's expert witnesses but were not admitted into evidence. After reviewing the foundation for admission laid by plaintiff, we find that the trial court did not abuse its discretion by excluding the evidence. Although evidence of an industry custom is clearly admissible to prove negligence, the custom must be certain, uniform and notorious. *Fogarty v Michigan Central R Co,* 180 Mich 422, 432; 147 NW 507 (1914). In this case, one of plaintiff's experts, William Shipp, only discovered the existence of the 1975 standards in 1981 after he was asked to evaluate the conditions at Lakeside Camp Park. In the course of his research, Shipp "came across" the set of standards which had been put together by a group of "sanitarians". The guidelines had been printed only once, in 1975, and had been disseminated to each of the 83 local Michigan counties and to Department of Public Health officials in Lansing. Shipp stated that, to his knowledge, the standards were only

disseminated upon request in 1975 and were not sent routinely to campground owners in Michigan. Shipp's testimony that the standards had been sent to each county was not based on personal knowledge but rather came second-hand from the person who gave him his copy. Finally, Shipp stated that he had not relied upon the standards "at all" in reaching his opinion but had only used them to cross-check his own independently-reached opinion. Plaintiff's second expert witness, William Heusner, was personally aware of the guidelines almost immediately after their publication but could add only that he thought the guidelines had been distributed through public health offices. Under these circumstances, we do not find that the trial court abused its discretion by excluding admission of the actual guidelines. We also note that plaintiff was able to present evidence of the recommended guidelines through the testimony of both experts, so that the jury was well aware of the recommendations. We do not believe that actual admission of the recommended guidelines would have altered the verdict in any way.

Plaintiff's final claim on appeal is that the trial court abused its discretion by excluding photographs of rocks found at the accident site six years after the accident. This claim is without merit. Even if the evidence had been more closely tied in to the date of the accident, we doubt that the jury would have disregarded plaintiff's own witness's statement that no rocks were found immediately after the accident despite a diligent search of the beach and lake bed.

Affirmed.