*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY DANIEL LAPORTE, Personal
Representative of the ESTATE OF JOANNE
LAPORTE,

      Plaintiff-Appellant,

v

THE KROGER COMPANY OF MICHIGAN,

      Defendant-Appellee.

UNPUBLISHED
November 30, 2023

No. 365370
Oakland Circuit Court
LC No. 2022-193071-NO

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

Joanne LaPorte was struck by an automatic sliding door as she entered a Kroger Company store. Her complaint alleges that the automatic doors were defective and dangerous, and that Kroger knew or should have known of the hazard the doors created.

The trial court granted summary disposition to Kroger, finding that although Kroger's store manager knew that the doors had "blind spots" that would not always detect the presence of an entering customer, LaPorte failed to establish that "this actually occurred prior to the accident." We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

LaPorte, who was in her 80s and used a cane to walk, fell as she entered a Kroger Company store in Commerce Township.[1] LaPorte testified that as she walked into the store, the automatic sliding doors at the entrance unexpectedly closed and knocked her to the ground. LaPorte recounted, "I was walking in the door and all of a sudden the door just pushed me as I walked in,"

---

[1] Joanne LaPorte, the plaintiff in the trial court, died on June 6, 2023. We refer to her personal representative as "plaintiff," and to Joanne as "LaPorte."

-1-

causing her to lose her balance and fall. According to LaPorte, the right sliding door hit her as it "was just starting to close."

Oscar Blaser, the store manager, testified that he did not see LaPorte fall, but responded to the scene shortly after. Blaser expressed that the automatic doors were working properly. He elaborated, "I had to physically turn the doors off on[]to the open position so that people could walk in and out, because the doors were doing what they're supposed to do, opening and closing [automatically]." Blaser reiterated that he observed "no issue" with the doors where LaPorte fell. But Blaser also stated:

> But the way she fell into the lobby, she was on the south side inside that lobby, and the sensors don't pick up that strong of an angle. So it's closing and opening while we're trying to tend to her and I turned [the doors] off.

Blaser acknowledged regarding the sensor that "if you're at a sharp side angle it may not pick you up." He said this blind spot existed "[o]ff to the side" and "[a]t the extreme opening" of the doors.

Blaser testified that employees check that all automatic doors are properly working each morning before opening the store, and any problems detected are referred to a technician. Daniel Temerowski, Kroger's in-house door technician, testified that he services about 70 store locations in the area, including the Commerce Township store. Most of his work dealt with the same type of automatic doors as those involved here. Temerowski explained the automatic doors' motion sensing system as follows: "Motions sensors, as the customer approaches [they] sense[] them[,] engaging the motor to open or close the door for the customer if there's nobody in the pickup zone." "[The sensor system] has multiple zones. There's like seven different zones, so it can pick them up anywhere from 15 feet away to within inches of the door[s]." Temerowski explained that sensors cover these doors' thresholds, which he termed "the blue zone."

LaPorte's counsel and Temerowski engaged in the following colloquy:

*Q*. When you say within inches of the door, so right at the threshold is there any sensor that picks up anything in the threshold?

*A*. Yes.

*Q*. Okay.

*A*. It's called the blue zone. It crosses over, each sensor will pick up that area. . . .

*Q*. Okay. When I'm talking about the threshold, I'm talking about where the track actually runs.

*A*. Yes.

*Q*. There's a sensor for that particular area?

*A*. Correct.

Temerowski explained that his job sometimes requires adjusting the zones and the sensors' coverage, as well as physical repairs and maintenance to the doors themselves.

Temerowski testified that maintenance and repair records showed numerous problems with the automatic doors in the past, though none related to the doors' sensors. He recalled that he had repaired the doors 11 days before LaPorte's fall because someone knocked the doors off the top track. Temerowski had never been called for a repair involving an injury caused by a door. He acknowledged that Kroger's maintenance records lacked any notes regarding routine checkups, as opposed to specific repairs, but he maintained that he conducted such checkups whenever called for repairs at a store he had not visited recently.

Kroger moved for summary disposition pursuant to MCR 2.116(C)(10), contending that LaPorte could not establish a genuine issue of material fact that the automatics doors malfunctioned or were defective, and that Kroger had neither actual nor constructive notice of the alleged defect or malfunction. Kroger characterized LaPorte's theory that some defect in the doors caused her fall as mere speculation.

In response, LaPorte first argued that the doors clearly malfunctioned at the time of her fall because they violated safety standards published by the American National Standard Institute (the ANSI standards) concerning the operation of automatic door sensors. LaPorte also argued that because Kroger created and maintained this dangerous condition, she need not prove actual or constructive notice. Nevertheless, Blaser's testimony that he knew of a blind spot in the sensors for the automatic doors established actual notice, LaPorte argued. Kroger also had constructive notice because viewed in LaPorte's favor, the evidence established the hazard's existence for a sufficient time before her fall. Further, LaPorte contended that Kroger's motion completely ignored its separate duty to inspect the premises, and that a reasonable inspection would have revealed the defect. Last, LaPorte asserted that her claim was not improperly speculative. At the very least, she urged, this case presented questions of fact concerning whether Kroger had notice of the automatic doors' defective and dangerous condition.

LaPorte submitted an affidavit from professional engineer Thomas Livernois to support her claims. Livernois averred:

> I tested the doors in question by standing next to the right door while it was in the fully-opened condition, and the door closed, striking me on my right side. . . . Industry standards require this type of door to remain open when a person or object is in the position I was during my inspection, and the doors violated this industry standard. The doors' presence sensors do not cover the entire open area between the doors, in violation of industry standards. Specifically, [the ANSI standards] require[] that the activation detection area be a minimum width equal to the width of the clear opening of the doors. Also, [they] require[] presence sensors for the doors to prevent a fully-opened door from closing when a person is in the space between two non[]overlapping activation detection areas. The doors in question violate these industry standards and are otherwise defective. These defects caused the doors to close while Joanne LaPorte was [between them] at the time of her accident, causing the accident and Ms. LaPorte's fall.

-3-

* * *

> The [ANSI] standards, and other general engineering principles, anticipate that a person may stop or move slowly through the door openings as Ms. LaPorte did in this case. They anticipate that the elderly, the infirm, children, and others may be distracted, or otherwise move slowly through these door openings. As such, the standards and ordinary care require these automatic doors to remain open when someone is in the path of travel of the doors as Ms. LaPorte was in the case at hand. The doors are not supposed to close when someone is in this area.

The doors' defect could have been corrected easily and readily "by either adjusting the presence sensors or adding an additional sensor to cover the areas at the extreme of the door opening, at a minimal cost," Livernois continued. He observed, given the ease with which his own inspection revealed the sensor defect at issue, that "any reasonable inspection of these doors would have immediately revealed the problems and the violation of standards . . . ." According to Livernois, Temerowski "either did not test the doors' operation or he failed to correct the defect[] after being aware of [it]."

Without holding a hearing, the trial court entered an opinion and order granting summary disposition. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting Kroger's motion for summary disposition because LaPorte sufficiently established factual questions regarding whether Kroger (1) negligently created and maintained a hazardous condition on the premises, (2) breached its duty to inspect, and (3) had actual and constructive notice of the applicable hazard but failed to warn of or correct it. The evidence creates triable questions of fact concerning Kroger's breach of the duty to maintain safe premises and its awareness of the hazard posed by the doors. And because a reasonable inference supports that LaPorte entered the store within the sensors' blind spot, summary disposition was improper.

### A. STANDARD OF REVIEW

We review de novo a trial court's summary disposition ruling. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When considering a motion brought under MCR 2.116(C)(10), a trial court must consider all evidence before it in the light most favorable to nonmoving party. *Id*. at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*.

### B. LEGAL BACKGROUND

As Kroger's invitee, LaPorte was entitled to "the highest level of protection" imposed under premises liability law. *James v Alberts,* 464 Mich 12, 20; 626 NW2d 158 (2001), quoting *Stitt v Holland Abundant Life Fellowship,* 462 Mich 591, 597; 614 NW2d 88 (2000). Kroger's duty encompassed not only warning LaPorte of any known dangers; Kroger was also obligated to

make its premises safe, which included the duty to inspect the premises and make necessary repairs or warn of any discovered hazards. See *Price v Kroger Co of Michigan*, 284 Mich App 496, 500; 773 NW2d 739 (2009). "A premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (quotation marks and citation omitted).

Kroger's liability also depends on whether it had actual or constructive notice of the automatic door defect. In *Prebenda v Tartaglia*, 245 Mich App 168, 169; 627 NW2d 610 (2001), this Court explained that "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land" if the possessor

> (a) knows, or by the exercise of reasonable care would discover, the condition, and should realize that it involves an unreasonable risk of harm to such invitees, (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Proof of notice is not required when a premises owner or his or her agents create a dangerous condition through active negligence. See *Williams v Borman's Foods, Inc*, 191 Mich App 320, 321; 477 NW2d 425 (1991) ("Negligence may consist of the failure of a defendant to discover a dangerous condition created by a third party. In that event, the defendant must have actual or constructive notice of the existence of the condition. Active negligence exists where a defendant or his agents have created a dangerous condition. In that case, proof of notice is unnecessary.").

### C. APPLICATION

### 1. KROGER'S NEGLIGENCE

LaPorte demonstrated the existence of a dangerous condition of the land creating an unreasonable risk of harm to invitees: that the doors were defective or malfunctioned when she fell. We acknowledge Blaser's testimony that, in his understanding, the doors operated normally. Nevertheless, Blaser admitted his awareness of a blind spot "[o]ff to the side" and "[a]t the extreme opening" of the doors. And Livernois's affidavit, which the trial court essentially ignored, substantiates that the right-side door through which LaPorte entered the store closed despite his presence, striking him in the side.

Blaser recalled that the doors continued opening and closing on LaPorte when she was on the ground at the doors' threshold. Livernois averred that the doors violated applicable safety standards,[2] and that the doors' sensors should have prevented them from closing on LaPorte or

---

[2] Citing *Braden v Workman*, 146 Mich App 287; 380 NW2d 84 (1985), Kroger faults Livernois for failing to aver that the industry standards were certain, uniform, and notorious. See *id*. at 293 ("Although evidence of an industry custom is clearly admissible to prove negligence, the custom must be certain, uniform and notorious."). Notably, Kroger fails to include any substantive

anyone else in the doors' threshold. Temerowski's testimony relatedly indicated that sensors for the type of doors here are meant to cover the doors' thresholds, thus supporting that the doors should not have closed on LaPorte, particularly in a repeated fashion, as they did here. Construing the evidence in LaPorte's favor, a question of fact exists concerning whether the doors' sensors at and near the doors' threshold were defective and constituted a dangerous condition posing an unreasonable risk of harm to invites.

A question of fact also exists regarding whether Kroger breached its duty to properly inspect the premises. "Land possessors share a special relationship with invitees that generates 'an affirmative duty to protect.' " *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430); slip op at 9 (citation omitted). This duty includes a duty to inspect the premises for hazards that might cause injury. *Price*, 284 Mich App at 500. "[T]he invitor must inspect the premises to discover any possible dangerous conditions of which the invitor is not aware and take reasonable precautions to protect the invitees from dangers that are foreseeable from use." *Hammack v Lutheran Social Servs*, 211 Mich App 1, 6; 535 NW2d 215 (1995).

Kroger owed LaPorte a duty to reasonably inspect the doors to determine their safety and discern any hidden dangers. Kroger did have an inspection procedure to identify and correct problems with the doors. Nevertheless, Temerowski never identified or corrected any issues with the doors' sensors during his inspections and repairs, despite that the doors' sensor-related defect was easily identifiable during Livernois's inspection. Livernois's averment creates a question of fact regarding whether Kroger's inspections were reasonable. It could be reasonably inferred that

---

analysis on this point. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). Further, Kroger fails to explain why industry standards such as those relied on by Livernois are not "certain, uniform, and notorious." And no published cases have included this requirement since *Braden*, which is not binding on this Court. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."); *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 420 n 8; 836 NW2d 498 (2013) (noting that a pre-1990 decision of this Court is not binding).

Even were *Braden* binding, it is not relevant here. *Braden* involved "recommended guidelines" issued by a regional "board of state sanitary engineers," not national standards governing industries. The snippet Kroger references generally applies to "customs," not industry standards. See 1 Dobbs, Hayden & Bublick, Torts (2d ed), § 180, pp 606-607 ("Limitations" on the use of "custom evidence" "had their origin in the belief, no longer followed, that the legal effect of recognizing custom was to create a new standard of care and not merely evidence to be considered. With the adoption of the rule that safety customs are only some evidence of negligence, the widespread usage requirement has become less justifiable."). For these reasons, we decline to discount Livernois's affidavit or otherwise affirm based on this line of argument.

a proper inspection 11 days before the accident would have revealed the sensor defect that allegedly caused LaPorte's fall, allowing for its correction.

To the extent that Kroger asserts that the doors included a warning that they could close unexpectedly and implicitly argues that this fulfilled its duties as relevant here, we decline to make this determination at the summary-disposition stage, given the current record. Notably, the only evidence of any warning, a photograph of the doors, does not clearly show what, if anything, warns patrons of the alleged hazard. The image is simply too blurry and/or zoomed out to decipher the sticker at the bottom of the doors allegedly including Kroger's warning. Further, whether the asserted warning reasonably and adequately protected invitees from danger under the circumstances should be determined by the jury. See *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995) ("If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide.").

And to the extent Kroger argues that Livernois's affidavit should be discounted for improperly opining on legal matters, we disagree. Although expert opinions do not extend to legal conclusions, Livernois's affidavit included various facts supporting his ultimate opinions. See *Maiden v Rozwood*, 461 Mich 109, 129 n 11; 597 NW2d 817 (1999) ("[T]he witness did not create a question of fact by merely opining that [the] defendant's performance violated the statutory standard. Whether the statutory standard of care was violated is a legal conclusion. The opinion of an expert does not extend to legal conclusions. The facts in the expert witnesses' affidavits properly created a question of fact.") (citation omitted); see also MRE 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Accordingly, we have not simply deferred to Livernois's opinions related to the ultimate issues in this case, but have analyzed his underlying factual averments, in conjunction with the other evidence, in concluding that questions of fact exist regarding Kroger's negligence.

## 2. NOTICE

We conclude that a question of fact also exists regarding Kroger's notice, both actual and constructive, of the alleged hazard.

Given our conclusion that a question of fact exists concerning whether the doors were defective, Blaser's testimony satisfies actual notice of the alleged defect. In particular, assuming that the doors' blind spot constituted a dangerous defect, Blaser explicitly acknowledged that there was a blind spot at the threshold and extreme opening of the doors. This shows his knowledge of the condition.

Constructive notice, however, is less straightforward. Here, plaintiff only argues that the sensor defect existed for a sufficient amount of time such that Kroger should have known of it. There admittedly is no evidence of precisely when or how the alleged sensor defect arose. Nevertheless, Blaser's testimony provides circumstantial evidence sufficient to infer that the defect had existed for an adequate amount of time before LaPorte's fall.

In this regard, this case is similar to *Clark v Kmart Corp*, 465 Mich 416; 634 NW2d 347 (2001), which involved the plaintiff's slip and fall on several loose grapes on the floor of the defendant's store. In *Clark*,

> there was no direct evidence of when or how the grapes came to be on the floor of the check-out lane. There was testimony from Kmart witnesses about the responsibilities of employees for observing and either reporting or remedying dangerous conditions. However, there was no evidence that any employee was actually aware of the grapes in the check-out lane.
>
> However, a Kmart employee testified that the check-out lane would have been closed no later than 2:30 a.m., about an hour before [the] plaintiff arrived. Given that evidence, a jury could reasonably infer that the loose grapes were, more likely than not, dropped when a customer brought grapes to the check-out lane to buy them while it was still open. From this, the jury could infer that an employee of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so. Further, the fact that the check-out lane had been closed for about an hour before [the] plaintiff fell establishes a sufficient length of time that the jury could infer that defendant should have discovered and rectified the condition.
>
> The availability of the inference that the grapes had been on the floor for at least an hour distinguishes this case from those in which defendants have been held entitled to directed verdicts because of the lack of evidence about when the dangerous condition arose. [*Id*. at 420-421.]

Here, Blaser testified that the doors had a blind spot of which he was apparently aware at the time of LaPorte's fall. He further described this blind spot as part of the doors' normal functioning. These facts are sufficient to infer that the alleged defect existed for enough time that Kroger should have known of it. In particular, because Blaser considered the blind spot a normal feature of the doors, it logically follows that this condition was present for a substantial time before LaPorte's fall, if not since the doors were initially installed.

Further, although evidence of a reasonable inspection can negate a plaintiff's evidence of notice, see *Lowrey*, 500 Mich at 9-11; *Albitus v Greektown Casino, LLC*, 339 Mich App 557, 563-564; 984 NW2d 511 (2021), we have already concluded that the evidence presents a question of fact regarding whether Kroger's inspections were reasonable under the circumstances. Kroger's focus on a lack of similar prior accidents is likewise unavailing. While evidence was presented that no one ever suffered an injury associated with the doors' sensors prior to LaPorte, that fact neither negates Kroger's notice of the dangerous condition nor eliminates its duty to abate it because "it would not be competent to prove an absence of accidents as tending to show an absence of negligence." *Larned v Vanderlinde*, 165 Mich 464, 468; 131 NW 165 (1911). "Evidence of absence of accidents usually involves generally unreliable negative evidence and does not tend

directly to prove absence of negligence." *Grubaugh v City of St Johns*, 82 Mich App 282, 289; 266 NW2d 791 (1978).[3]

Kroger's reasoning would deny recovery to the first patron injured by the allegedly defective doors, but then permit recovery to subsequent victims. The fact that no prior injury has occurred simply does not prove that Kroger should not have reasonably anticipated an injury. As the Idaho Supreme Court put it,

> Reduced to its essence, the "prior similar incidents" requirement translates into the familiar but fallacious saying in negligence law that every dog gets one free bite before its owner can be held to be negligent for failing to control the dog. That license which is refused to a dog's owner should be withheld from a building's owner . . . as well. [*Sharp v W H Moore, Inc*, 118 Idaho 297, 301; 796 P2d 506 (1990).]

In sum, a question of fact exists concerning Kroger's actual and constructive notice of the alleged hazard.

### 3. CAUSATION

Finally, we reject Kroger's argument that LaPorte failed to factually support that the sensor defect caused her accident. Blaser testified that "the way she fell into the lobby, she was on the south side inside that lobby, and the sensors don't pick up that strong of an angle." This testimony supports that LaPorte fell in the area not covered by the sensors. Further, given the defect in the sensors' coverage and the absence of previous accidents, it is reasonable to infer that LaPorte entered the store at the "sharp angle" described by Blaser as outside the sensors' range. A jury will have to resolve this question.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle
/s/ Christopher P. Yates

---

[3] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases.").